# Exhibit J



Lawrence P. Block
lblock@stinsonmoheck.com
www.stinsonmoheck.com

STINSON
MORRISON
HECKER LLP

1150 18th Street N.W., Suite 800
Washington, D.C. 20036-3816

*Tel* (202) 785-9100
*Fax* (202) 785-9163

October 17, 2005

VIA FACSIMILE AND FEDERAL EXPRESS
Office of Hearings and Appeals
Small Business Administration
Suite 5900, 409 3rd Street, SW
Washington, DC 20416

VIA FEDERAL EXPRESS
NRCC Leavenworth Division
c/o Viola Owens, Contracting Specialist
600 Thomas Avenue, Unit 3
Room 254
Fort Leavenworth, KS 66027-1417

RE:    Solicitation No. W91QF4-05-R-0011; Change of North American Industrial
       Classification Code (NAICS) for Contractor Support Services from NAICS
       541710 to NAICS 541511

Dear Sir/Madam:

      Advanced Systems Technology, Incorporated ("AST"), 4111 West Gore
Blvd., Lawton, OK 73505, (580) 248-0321, by and through undersigned counsel,
hereby timely protests, pursuant to 13 C.F.R. § 121.1601 et al and FAR 19.303, the
decision of the NRCC Leavenworth Division to modify the NAICS Code in the
Solicitation from NAICS 541710 to 541511 for Solicitation No. W91QF4-05-R-0011.
The Office of Hearings and Appeals has jurisdiction over this matter pursuant to 13
C.F.R. § 134.102(k). AST requests an oral hearing pursuant to 13 C.F.R. § 134.222.

I.     Factual Background

      As the result of a decision of the SBA Office of Hearings and Appeals dated
October 7, 2005, Docket No. NAICS-2005-09-08-48, titled *NAICS Appeal of
RhinoCorps, Ltd. Co.*, Solicitation No. W91QF4-05-R-0011 was amended to change
the NAICS Code from NAICS 541710 to 541511. (Exhibit A). AST's Motion to
Intervene in that proceeding was denied as the request was submitted after the record
had closed.[1] AST is a veteran-owned small business under NAICS Code 541710.

KANSAS CITY
OVERLAND PARK
WICHITA
WASHINGTON, D.C.
PHOENIX
ST. LOUIS
OMAHA
JEFFERSON CITY

---

[1] AST's Motion to Intervene was submitted the day after it learned that an appeal had been filed by
RhinoLabs.

DB03/504006 0026/6607199.1

Office of Hearings and Appeals
October 17, 2005
Page 2

II.    Argument

    A.    The NAICS Code Change was Improper.

The original NAICS Code, 541710, with a size standard of 500 employees, would increase the eligible pool of small businesses to include not only all small businesses eligible under the more restrictive NAICS Code 541511, but also other small businesses, including the incumbent contractor AST. AST has been supporting TRADOC Analysis Center, White Sands Missile Range ("TRAC-WSMR") for over 10 years. AST is the incumbent contractor for the same support services provided for TRAC-WSMR under Contract DAAD07-98-C-0106 ("Contract"). Solicitation No. W91QF4-05-R-0011 is the follow-on solicitation to the Contract.

The change of the NAICS Code in the Solicitation severely and unfairly impacted AST as the incumbent veteran-owned small business prime contractor since AST does not qualify as a small business under the redesignated NAICS Code 541511 and therefore will not be able to bid for this procurement.

The correct NAICS Code is that which best describes the principal purpose of the services being procured, in light of the industry description in the NAICS Manual, the description in the solicitation, and the relative weight of each element of the solicitation. *NAICS Appeal of Durodyne, Inc.*, SBA No. NAICS-4536, at 4 (2003); 13 C.F.R. § 121.402(b). Where the Contracting Officer has erred in designating the NAICS Code for a particular procurement, the Office of Hearings and Appeals has the authority to reverse a Contracting Officer's designation and render a final agency decision on NAICS Code appeals. *NAICS Appeal of Global Travel Network*, SBA No. NAICS-4420 at 3 (2001).

According to the 2002 NAICS Code directory, NAICS Code 541710 involves "establishments primarily engaged in research and experimental development in the physical, engineering, and life sciences, such as agriculture, electronics, environmental, biology, botany, biotechnology, computers, chemistry, food, fisheries, forests, geology, health, mathematics, medicine, oceanography, pharmacy, physics, veterinary, or other allied subjects.

AST personnel model the physical, doctrinal, and human performance aspects of future weapons systems or processes using established and approved future war fighting scenarios during the research and conceptual stage of development to generate data for detailed analysis. The analysis is conducted to determine the combat effectiveness of the proposed system using established Operations Research Systems Analysis techniques. Upon completion of the data analysis phase, we provide input to the preparation of study documents that provide insight to system combat effectiveness contributions to Army and Joint forces. The majority of AST personnel performing on the current contract, and projected to perform on the follow-

2

Office of Hearings and Appeals
October 17, 2005
Page 3

on contract, are Combat Operations Analysts and Operations Research Systems
Analysts.

AST maintains that NAICS 541710 is the NAICS Code that most accurately
covers the work conducted on the TRADOC Analysis Center, White Sands Missile
Range (TRAC-WSMR) contract. AST maintains that NAICS 541511, Custom
Computer Programming Services, is not applicable since a very small number of AST
personnel actually are involved with computer systems design or programming.
Rather, these computer-related tasks are a minor support effort necessary for TRAC-
WSMR to perform its mission as discussed below.

Because the Government changed the NAICS Code in the Solicitation as a
result of this Board's decision in Docket No. NAICS-2005-09-08-48, titled *NAICS
Appeal of RhinoCorps, Ltd. Co.*, ("Decision") many of AST's comments are
addressed to the Decision issued by the Board and the fallacy of the Decision issued.
A copy of the decision is attached as Exhibit B.

Neither the Appellant (RhinoLabs) nor the Contracting Officer Representative
has detailed knowledge of the mission of TRAC-WSMR. The Appellant, while he
may have some expertise in simulations, has no idea of the models and simulations
used at TRAC-WSMR, the true meaning of their mission, how they operate and
where their products fit into the Department of Defense Acquisition Model. Further,
they do not know the extent of the computer related tasks contained in the PWS.

Quite simply, the Board issued a decision without all of the relevant
information and would benefit from input from the incumbent contractor and TRAC-
WSMR government personnel – who could best state just how much work effort done
on the current TRAC-WSMR contract was under which task, and what resources
were required to do it. Neither RhinoLabs nor the Fort Leavenworth contracting
office have ever worked at TRAC-WSMR and therefore do not understand the nature
of the work performed. At a minimum, the court would have benefited from basic
information from TRAC-WSMR government personnel.

The summary of the Decision is inaccurate as the procurement is NOT a
procurement for: (1) Maintenance/enhancement of Program Databases; (2)
Administrative support of conferences; (3) Software support of modeling and
simulations for Wargaming/combat programs; (4) Provision of systems engineering
and analysis for military exercises. It is as stated in the PWS: "The contractor shall
provide personnel expertise and skills required to accomplish TRAC-WSMR
missions related to analysis, studies, modeling, simulation and Information
Technology." The items stated in the Digest are not the primary tasks nor represent
the major work effort of the contractor. See Exhibit B at Page 1.

Accordingly, the "Issue" on Page 2 of the Decision is inaccurate.

Office of Hearings and Appeals
October 17, 2005
Page 4

On Page 2 of the Decision, Fact 1, the Board stated: "The purpose of this procurement is to provide support for the mission of TRAC WSMR." The mission of TRAC-WSMR is as follows and is set forth in the Solicitation: "The contractor will add the needed skills and expertise to all areas of the TRAC Mission Essential Task List (METL):

- **Conduct studies and analysis** to enable Army decisions
- **Lead analysis** for Army experimentation and exercises
- **Develop scenarios** to underpin Army transformation
- Develop maintain and enhance models and simulations
- **Research battlefield phenomenology** to improve modeling and analysis"

The three bolded statements can be implemented without having any in-depth knowledge of IT or computers. These tasks can be, and historically have been, done without using computers. Computers are tools to speed up the process.

In order to appreciate TRAC-WSMR's mission, one must understand how and where TRAC fits into the Department of Defense acquisition process. It is significant to note that **TRAC is a Federal Laboratory** and AST support to TRAC consists of performing specific tasks involving systematic research regarding future army systems. TRAC has been designated a Federal Laboratory because of the work that TRAC is tasked to accomplish – clearly a designation that recognizes the Research, Development and Experimentation nature of TRAC mission and work. TRAC is authorized to initiate Federal Cooperative Research and Development Agreements ("CRADAs") and, in fact, have several currently active. All of these CRADAs are for Research and Development efforts.

The chart below depicts the US Dept of Defense Acquisition Model and where TRAC provides major support to the process.



4

Office of Hearings and Appeals
October 17, 2005
Page 5

In the Pre-Systems Acquisition Phase, TRAC is heavily involved performing systematic investigations/experiments in determining Advanced Concepts Requirements and providing support to technology development. AST support to TRAC at this time consists of performing discrete tasks, such as supporting the conduct of studies, modeling and analysis activities and using the models and simulations running on computers as tools to generate data for analysis.

AST does support TRAC in other tasks such as security services, computer operations, and other Information Technology services but these are primarily oriented toward supporting the TRAC operational infrastructure in meeting mission requirements – and again these services do not make up the major contractor support effort.

The contractor performs the listed tasks in a very systematic manner. For example, when tasked to support a modeling and analysis task, the contractor must do significant research in determining the data for input, development of the measures of merit, measures of effectiveness, and measures of performance. Once the data is input into the model, multiple model runs are conducted to generate the data for analysis. This process that is used within TRAC is called Model-Experiment-Model. Inherent in the model run activity is to conduct sensitivity runs with modified data to determine potential impacts on system effectiveness. This process is in fact an experimentation wherein data is captured, analyzed, and documented for TRAC approval. The funding source for the two phases wherein TRAC is heavily involved is Research, Development, Test, and Evaluation (RDT&E) funds.

The above tasks reflect a lot more than just "custom computer support services." Does a software analyst conduct studies and analyses, or lead analysis for experimentation and exercises, or develop scenarios, or research battlefield phenomenology? No, an ORSA typically does this sort of work. Yes, the ORSA will be on a team consisting of a diverse skill set of individuals, including those who perform computer support services and similar tasks and may use a computer in performing his job. But computer support services are just that – supporting tasks that provide the necessary support to the Army-directed (or other agency) study that requires the skills of ALL of the labor categories as listed in the RFP.

AST's primary mission is not to provide computer programming or IT related services or consulting or advising services; rather AST provides specific input to the conduct of a TRAC study using ORSA processes that are not dependent on computers.

Office of Hearings and Appeals
October 17, 2005
Page 6

On Page 3 of the Decision, Fact 9 the Board states that the PWS lists two base tasks under 3.1. This is incorrect. There are four base tasks,

> 3.1.1 As stated in the Decision
> 3.1.2 As stated in the Decision
> 3.1.3 Modeling and Simulation
> 3.1.4 Scenarios, Wargaming, Exercise and Experimentation Support, and Analysis.

Tasks 3.1.1 and 3.1.2 are minimal in terms of effort expended by contractor personnel. In the case of 3.1.1, the database is a Microsoft Excel spreadsheet database that is maintained and updated by the Senior Program Manager. No computer programming skills or computer design skills are required.

The major base tasks in terms of personnel and man-hours committed to the tasks are 3.1.3 and 3.1.4.

On Page 3-4 of the Decision, Fact 12, the Network Management and System Charts do not follow the text of subparagraphs 3.1.3.1 through 3.1.4.5. They follow the text of subparagraph 3.2.1. This fact is inaccurate.

This fact further states: "According to the charts, software skills are required to perform the Models and Simulation, Network Management, System Administration and Other tasks." There are no labor categories specified for Network Management Tasks or System Administration Tasks.

The Models and Simulation, Network Management, Systems Administration and Other Tasks all exist to support the much larger Scenario and Wargaming Production, Analysis and Development Tasks, and the Brigade and Below Production and Analysis Tasks. The successful offeror for this contract will demonstrate an understanding of how this all goes together, and who understands the fact that the computer support (and network and system administration, etc) tasks are NOT stand-alone tasks. They exist to support the ORSA tasks which is the main objective of the TRAC-WSMR Solicitation. A company that can only do the computer support tasks is NOT going to be able to do the work required of the RFP. Simply stated, software analysts and computer operators cannot do ORSA tasks. System administrators cannot develop scenarios. The scenario development tasks in the contract do not relate to the simple building of scenarios in which to simulate DoD current systems, but require the contractor to conduct research into the possible uses of systems which may still be in concept development and develop tactics, techniques, procedures and doctrine on how these systems might or might not contribute to force effectiveness in years 2015 and out.

On Page 4 of the Decision, Fact 13, the fact quotes paragraph 5.1. Special Knowledge and Experience. As stated it is correct as far as it went. However, an

Office of Hearings and Appeals
October 17, 2005
Page 7

important portion of paragraph 5.1 was omitted. Paragraph 5.1 also states "Individual Task Orders may not require application of knowledge and experience in all these areas; however, some will require in-depth application of broad knowledge and experience in multiple areas. The contractor must have the ability to augment the TRAC-WSMR workforce with qualified personnel to meet requirements of a specified Task Order issued within the scope of this contract.

On Page 4 of the Decision, Fact 14, it states that Paragraphs 6.1 through 6.14 describe the task and qualifications of the labor categories listed in the CLINS. Note that Paragraph 6.14, "Contractor Personnel Training" is not listed in the CLINS.

This fact also makes the generalized statement "However, apart from specific experience and knowledge, the labor categories typically require skills in computer gaming, simulations, operations, security, software design, and software testing. In short, even though knowledge of Operations Research/Systems analyst, Combat Operations, Army doctrine, tactics, force structure, communications, training, emerging threats, and the ability to train is required, use and familiarity with the computer systems is inherent to perform this contract."

The term "computer gaming" is used, however, this term is not found anywhere in the PWS, so we are uncertain of its origins in the ruling. It is also noted that "gaming" can be done without the use of computers.

Our analysis of the above statement by labor category is depicted in the table attached as Exhibit 1. The table reflects the labor categories containing any "computer gaming, simulations, operations, security, software design, and software testing" comments as required by the PWS.

It is also our belief that most if not all professional jobs require some familiarity with computer systems. This is primarily because of the "office computer" with its suite of productivity software such as word processing, spreadsheet, graphics, database and email software. This familiarity with computer systems does not require computer hardware or software design or software programming skills, rather an ability to work with the applications software packages designed and programmed by someone else.

On Page 5 of the Decision, the Board discusses RhinoLab's Appeal and Argument. In the second paragraph, Appellant asserts other solicitations for similar procurements to support TRAC have not used NAICS code 541710, but rather, have used NAICS code 541330. This is partially true. Prior to 1998 and the current TRAC-WSMR contract, the SIC used was 8711. Again this is indicative of the lack of knowledge the Appellant has regarding the TRAC-WSMR work effort and contract history. The amount of R&D funding for contractor support has increased significantly over the past 8 years to the point it is the primary funding source for contractor support to TRAC-WSMR. It is also noted that other similar procurements,

Office of Hearings and Appeals
October 17, 2005
Page 8

albeit not for TRAC-WSMR have used NAICS 541710. See Exhibits 2 and 3 for recent examples.

In the third paragraph, "Appellant argues persuasively that the support services the Army seeks here to procure are not Research and Development as envisioned in NAICS Code 541710." Again, a lack of knowledge on Appellant's part regarding the nature of work performed at TRAC-WSMR as well as NAICS Code 541710. Within NAICS 541710, there is an industry titled "Industrial research and development laboratories or services." (See Exhibit 4 for listing of NAICS 541710 industries.) We note in particular the "services" since it is key to explain why we believe that NAICS 541710 is the appropriate NAICS for the TRAC support contracts. It is commonly accepted within industry and the military that Industrial Engineers perform industrial R&D for both products and services and there is a very close relationship to Operations Research. Factually, Industrial Engineering is one of the several accepted academic degrees for military Operations Research qualification because of its close relationship to operations research. See Appendix 5 for discussions of Industrial Engineering extracted from Internet resources. Further evidence of the Industrial Engineering and Operations Research connection is that TRAC-WSMR has a Professional Development education program for government employees at New Mexico State University for course work leading to an M.S. in Industrial Engineering. AST provides the same educational benefit to our employees at TRAC-WSMR.

In the last sentence of third paragraph on Page 5 of the Decision, Appellant's argument states "there is no requirement that TRAC utilize physical, engineering, or biological sciences in laboratories to develop products, as does the Army Research Laboratory." This is unclear as to relativity to the issue. Facts are that TRAC is a Federal Laboratory, is a member of the Federal Laboratory Consortium, and NAICS 541710 does include R&D services.

In the Decision, Pages 6-8, the Board states its rationale for determining that NAICS Code 541710 is inappropriate for the Solicitation. Unfortunately, many of the statements contained therein are based on a lack of knowledge regarding the true nature of the work performed at TRAC-WSMR.

AST offers the following in response to the comments made in Pages 6-8 of the Decision
:

- There is no acknowledgement that Industrial R&D laboratories and services is also part of NAICS 541710.
- There is no acknowledgement that TRAC is a Federal Laboratory charged with conduct of research and analysis activities to generate information for input to senior Army leaders for consideration in arriving at their decisions regarding Army systems.

8

Office of Hearings and Appeals
October 17, 2005
Page 9

- AST has shown the close connection of industrial engineering and operations research in the context of education, recognition by the civilian and military community, and to the major work processes and effort in support of TRAC.
- Computer operations and software design and programming are NOT the major support effort on the TRAC-WSMR contract.
- The NAICS that should be assigned is the NAICS that most represents the establishment's principal product or service (See Exhibit 6, NAICS Clarification Memorandum No. 3).
- The TRAC-WSMR principal product or service is clearly stated in the TRAC Mission Essential Task List.
- The contractor does perform analyses and studies and modeling and simulation that are in fact applications of operations research within the RDT&E area, using RDT&E funds, in support of a Federal Laboratory, in the laboratory facilities, to develop data in support of the customer.

On Page 9 of the Decision, third paragraph, the Board states: "Moreover, for approximately 92,000 of the 212,00 yearly estimated hours (including management hours), writing software, operating hardware, maintaining hardware, and managing a computer system is their primary function." These tasks may be their primary function, but they also perform other tasks. In keeping with the NAICS discussion regarding assigning a NAICS code based on the "principal services rendered", it would follow that computer related functions ARE NOT the primary service rendered by the contractor since the 92,000 hours represents only 43% of the total work effort on the contract. And considering that in several labor categories included in the 92,000 hours, such as categories 120 and 124 only a very small portion of their time is actually spent performing computer related tasks, the 43% percentage would be less. Clearly, this does not represent the principal service to be rendered on this contract.

In the next paragraph, regarding the comment about the Senior Program Manager, AST acknowledges that he must have experience in the areas listed, but the requirement is not intended to require that he code, perform software or hardware system design, or anything approaching that on the contract. As the senior manager he is responsible for all of the activities on the contract and is required to approve or disapprove any actions that subordinate managers recommend to him regarding their activities that may include decisions requiring the listed qualifications. We maintain that since the conduct of studies and analysis and utilization of the ORSA process is the major overall requirement on this contract, the use of computers to perform these functions is a tool. Studies and analysis and the ORSA process was conducted before computers surfaced within the community and the major benefit of computers has been to shorten the time required and made the process more efficient.

9

Office of Hearings and Appeals
October 17, 2005
Page 10

On Page 10 of the Decision, top paragraph. Regarding the last sentence we disagree that this falls under Custom Computer Programming Services NAICS 541511. Since none of the Simulator Interactors require college degrees we disagree with the statement "capability to work with computer software and hardware at an advanced level". They use computer software and operate the computers but they do not design or program the systems. They do research to determine the data to input into databases, but do not design or program the database. The field directives and maneuver translation and conversion into computer models and simulations is based on military experience and in the continual study of capabilities of systems being considered by DoD for further research and development. The Simulator Interactors, Combat Operations Analysts, and Operations Research Analysts use the computers to conduct analysis on Advanced Concepts Requirements to guide decision makers. Again, the computer is a tool.

On Page 10 of the Decision, in the second, third, fourth paragraphs: In each of these cases the computer is a tool. AST acknowledges that AST, on occasion, modify software and this involves both software design and programming. However, that is not the primary task on this contract. The tasks of modifying the software are not simply programming in of updates but are in fact researching and development tasks to determine how a model can simulate a system that is being considered for or is in R&D. The statement regarding technical writing and office management and research analysis having strong relationship to computer services is not valid. AST agrees that these personnel all use computers, but again the computers are office tools and do not fall within the industry of Custom Computer Programming Services.

On Page 10 of the Decision, last paragraph. AST disagrees with the Board's assessment in the manner in which it is stated. AST would agree with a statement that approximately 75% of the total labor category hours listed involved use computers, but disagree with the implication that 75% are either directly related or strongly related to the provision of computer software, modification, testing or supporting services. It is not clear what the Board is considering as the services mentioned. AST is aware that only approximately 10 of the 80 personnel on the current contract are actually involved in the design and programming of computer software.

On Page 11 of the Decision, paragraph in middle. The last two sentences in this paragraph are totally invalid. Regarding the comment that computer software and hardware has graduated from being merely a tool, we have established elsewhere in our protest that this comment is incorrect. The computer related services are in fact a tool to speed up achievement of the final products and services that are required by the solicitation – studies and analysis. The Army DOES NOT require the support contractor to be expert in writing, modifying, testing, and supporting software as an integral and essential part of the services required by the RFP. We have shown the direct correlation between the Industrial Engineer and Operations Research and the type work they do, the processes they follow, and the objective. Everyone in high

Office of Hearings and Appeals
October 17, 2005
Page 11

technology environments uses computers as tools for job performance. But in no way can the work performed at TRAC be termed as Custom Computer Programming Services.

III.    Conclusion

The purpose of the Small Business Act is to increase the bid opportunities for small businesses for federal procurements. The Contracting Officer has instead limited bidding opportunities for small business by modifying the NAICS Code for Solicitation No. W91QF4-05-R-0011 improperly and without any justification as the decision of *RhinoLabs* is incorrect. Important and relevant information regarding the actual nature of the work performed for TRAC-WSMR was not considered by the Board prior to its decision. There is an industry listed in NAICS 541710 that more closely is related to the work performed on this contract – Industrial Research and Development Laboratories and Services. The correct NAICS Code of 541710 should be reinstated.

Please contact me with any questions.

Sincerely,

**STINSON MORRISON HECKER LLP**

Lawrence P. Block

cc:

VIA FEDERAL EXPRESS

John W. Klein
SBA Office of General Counsel
409 3rd Street S. W. Suite 7200
Washington, DC 20416

David A. Javdan, Esq.
General Counsel
U.S. Small Business Administration
409 Third Street, S.W.
Washington, D.C. 20416-0005

11

# Exhibit A

| AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT | | | | 1. CONTRACT ID CODE<br>S | PAGE OF PAGES<br>1        2 |
|---|---|---|---|---|---|

| 2. AMENDMENT/MODIFICATION NO.<br>0003 | 3. EFFECTIVE DATE<br>12-Oct-2005 | 4. REQUISITION/PURCHASE REQ. NO.<br>W80A0C51470503 | | 5. PROJECT NO.(If applicable) | |
|---|---|---|---|---|---|

| 6. ISSUED BY                                    CODE | W91QF4 | 7. ADMINISTERED BY (If other than item 6)         CODE | |
|---|---|---|---|
| NRCC LEAVENWORTH DIV<br>600 THOMAS AVE UNIT 3<br>ROOM 254<br>FORT LEAVENWORTH KS 66027-1417 | | **See Item 6** | |

| 8. NAME AND ADDRESS OF CONTRACTOR (No., Street, County, State and Zip Code) | | X | 9A. AMENDMENT OF SOLICITATION NO.<br>W91QF4-05-R-0011 |
|---|---|---|---|
| | | X | 9B. DATED (SEE ITEM 11)<br>30-Aug-2005 |
| | | | 10A. MOD. OF CONTRACT/ORDER NO. |
| | | | 10B. DATED (SEE ITEM 13) |
| CODE | FACILITY CODE | | |

## 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

| X | The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offer | X | is extended, | | is not extended. |
|---|---|---|---|---|---|

Offer must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended by one of the following methods:
(a) By completing Items 8 and 15, and returning     1     copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted;
or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE
RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN
REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter,
provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

| 12. ACCOUNTING AND APPROPRIATION DATA (If required) |
|---|

## 13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS. IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

| | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. |
|---|---|
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(B). |
| | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: |
| | D. OTHER (Specify type of modification and authority) |

| E. IMPORTANT:  Contractor | | is not, | | is required to sign this document and return | | copies to the issuing office. |
|---|---|---|---|---|---|---|

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter
where feasible.)
a. Reason for Amendment: Due to SBA decision on NAICS code appeal, Docket NAICS-2005-09-08-48, the appropriate NAICS code for this
procurement is 541511, with a corresponding $21 million annual receipts size standard. The NAICS code specified under
W91QF4-05-R-0011 is changed to 541511 to conform to the decision.
b. The proposal due date is extended to 27 OCT 2005 at 2:00 PM CDT.
c. The following clarification is provided: CLIN 0004, and corresponding subsequent option year CLINs, ACCOUNTING FOR CONTRACTOR
SERVICES shall be completed with the cost associated with complying with paragraph H.19., page 89 of the solicitation.
d. Append to Paragraph G.4 Payments:
    d. Invoices for Material, Services, and Equipment and related costs shall be submitted as a separate invoice and shall include
supporting documentation for actual expenditures and related costs. Unsubstantiated costs shall not be allowed.

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER (Type or print) | | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print) | |
|---|---|---|---|
| | | TEL:                                EMAIL: | |
| 15B. CONTRACTOR/OFFEROR | 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA<br>BY | 16C. DATE SIGNED<br>12-Oct-2005 |
| (Signature of person authorized to sign) | | (Signature of Contracting Officer) | |

| EXCEPTION TO SF 30<br>APPROVED BY OIRM 11-84 | 30-105-04 | STANDARD FORM 30 (Rev. 10-83)<br>Prescribed by GSA<br>FAR (48 CFR) 53.243 |
|---|---|---|

W91QF4-05-R-0011
0003
Page 2 of 2

SECTION SF 30 BLOCK 14 CONTINUATION PAGE

**SUMMARY OF CHANGES**

(End of Summary of Changes)

# Exhibit B

UNITED STATES OF AMERICA
SMALL BUSINESS ADMINISTRATION
OFFICE OF HEARINGS AND APPEALS
WASHINGTON, D.C.

| | |
|---|---|
| NAICS APPEAL OF: | ) |
| | ) |
| RhinoCorps, Ltd. | ) Docket No. NAICS-2005-09-08-48 |
| | ) |
| Appellant | ) Decided: October 7, 2005 |
| | ) |
| Solicitation No. W91QF4-05-R-0011 | ) |
| U.S. Army Contracting Agency | ) |
| Northern Region Contracting Center | ) |
| Fort Leavenworth, Kansas | ) |
| | ) |

## APPEARANCE

Anthony Contri, Esq., President, RhinoCorps, Ltd. Appellant

## DIGEST

A procurement for (1) Maintenance/enhancement of program databases; (2) Administrative support of conferences; (3) Software support of modeling and simulations for wargaming/combat programs; and (4) Provision of systems engineering and analysis for military exercises is appropriately classified under North American Industry Classification System (NAICS) code 541511, Custom Computer Programming Services, with a corresponding $21 million annual receipts size standard.

## DECISION

PENDER, Administrative Judge:

## Jurisdiction

This appeal is decided under the Small Business Act of 1958, 15 U.S.C. § 631 *et seq.*, and 13 C.F.R. Parts 121 and 134.

- 2 -

## Issue

Whether a procurement for: (1) Maintenance/enhancement of program databases;
(2) Administrative support of conferences; (3) Software support of modeling and simulations for
wargaming/combat programs; and (4) Provision of systems engineering and analysis for military
exercises is appropriately classified under North American Industry Classification System
(NAICS) code 541710, Research and Development in the Physical, Engineering, and Life
Sciences or 541330, Engineering Services, or some other NAICS code.

## Facts

1.     On August 30, 2005, the U. S. Army Contracting Agency, Northern Region Contracting
Center in Fort Leavenworth, Kansas ("Army"), issued Request for Proposals No. W91QF4-05-R-
0011 ("RFP"). The purpose of the procurement is to provide support for the mission of the U.S.
Army Training and Doctrine Command ("TRADOC") Analysis Center ("TRAC") at White
Sands Missile Range, New Mexico ("WSMR"). The Procuring Contracting Officer ("PCO")
restricted competition to small businesses and designated North American Industry Classification
System ("NAICS") code 541710, Research and Development in the Physical, Engineering, and
Life Sciences, which has a 500 employee size standard.

2.     The RFP provided the Army would award the successful offeror an Indefinite Quantity
type contract for non-personal services. The RFP (Section B, paragraph B. 1.b) stated the Army
would award all contract services by issuing firm, fixed price Task Orders using loaded labor
rates established in the contract.

3.     Section B, paragraph B.10., contains the Contract Line Item Numbers ("CLINs") where
the offerors are to propose prices for the basic contract and options. The Army separated the
CLINs by labor categories with an estimated number of hours placed next to the type of labor.
Offerors are to propose an hourly rate, multiply the total estimated hours by the rate, and write in
the total the amount for each rate. Offerors are also required to propose an hourly overhead rate
separate from that total dollar amount for each rate. There are no specific labor categories for
scientists or engineers.

4.     The total number of labor hours for the CLINs together is approximately 212,000 hours.
The largest CLIN category (25,140 hours per year) is for "Computer Op III/Asst Tech Ed."
Total Computer Operation hours is more than 37,000 hours. There are also large numbers of
estimated hours for Project Leaders, OR/SAs (Operations Research /Systems Analysts - 28,000),
S/W Analysts (Software Analysts - 32,000), Combat Operations Analysts (36,000), and
Simulator Interactors (30,000).  These labor categories account for 78% of the 212,000-hour
total. [1]

---

[1]     The OR/SAs include three different categories, *i.e.*, Senior OR/SA Study Lead, Senior
OR/SA and OR/SA. The others include more than one category as well.

- 3 -

5.    This Office requested the Independent Government Estimate ("IGE") from the PCO, which he provided. The IGE contains the Government's estimated hourly rates for the labor categories found in the CLINs. The IGE is necessarily source selection sensitive and I cannot reveal specific information contained therein.

6.    Section C of the RFP contains the Performance Work Statement ("PWS"). The PWS describes the work the offerors are to accomplish and the requirements for the labor categories. In addition, the PWS describes qualifications for the labor codes listed in the CLINs.

7.    Paragraph C.1., states "The Contractor shall provide personnel expertise and skills required to accomplish TRAC-WSMR missions related to analysis, studies, modeling, simulation, and Information Technology."

8.    Section C, paragraph 2.3 states that Contractor personnel are to "provide technical capabilities as members of the TRAC study/modeling teams for the planning and conduct of analyses and studies, the development and improvement of combat models, computer operations and maintenance, and display of data through multimedia and production projects."

9.    The PWS lists two base tasks under paragraph 3.1. The first requires the Contractor to maintain, enhance, and perform a quarterly update of an automated program database. The second base task is for the Contractor to provide administrative support for TRAC sponsored conferences - to include all presentations, coordination, invitations/conference information, and preparation of facilities for two to three conferences per year.

10.    PWS paragraph 3.1.3. is entitled Modeling and Simulation. It contains subparagraphs that describe the work the contractor must accomplish under this heading and identifies the modeling programs TRAC uses. Its first requirement is that the Contractor will support the development, maintenance, and enhancement of certain named analytical models (paragraph 3.1.3.1.). This effort requires software development activities, including system and data analysis, system programming, and database and application prototyping. It also requires other computer/software skills and significant knowledge of Army policies, doctrine, concepts, tactics, techniques and procedures. The Contractor is also required to provide configuration management ("CM") support, which, in this context, appears to be a requirement to track changes to software or database baselines (paragraph 3.1.3.2.).

11.    PWS Paragraph 3.1.4. and its subparagraphs, describe effort associated with Scenarios, Wargaming, Exercise and Experimentation Support, and Analysis. These paragraphs describe how the contractor is to utilize its experience, in ". . . combination with OR/SA techniques, to conduct analyses of Doctrine, Organizations, Training, Materiel, Leadership and Education, Personnel, and Facilities." Other detailed requirements include conducting gaming exercises and providing systems engineering and analyses for military exercises and experiments.

12.    Following the text of subparagraphs 3.1.3.1. through 3.1.4.5. are charts that identify what contractors are to accomplish in performing Models and Simulations, Scenario and Wargaming Production, Analysis and Development, Other, Network Management, and System

- 4 -

Administration tasks. Underneath each chart is the labor category the Government believes will
be associated with these tasks. There is a significant emphasis on computer usage/operation,
programming, etc., skills to perform the contract. The PWS Systems Administration Tasks
diagram focuses the contractor on performing computer operation and software tasks, *e.g.*, SW
development-modification-testing-troubleshooting-administration. According to the charts,
software skills are required to perform the Models and Simulation, Network Management,
Systems Administration, and Other Tasks. The Scenario and Wargaming Production, Analysis
and Development Tasks will require the Operations Research/Systems Analyst ("ORSA"),
Combat Operations Analysts, and Simulator Interactor /Trainer skills.

13.     PWS paragraph 5.1. provides:

> Special Knowledge And Experience. The Contractor's full-time and part-time
> staff must be knowledgeable and experienced in the following areas: DA and
> joint policies, doctrine, concepts, tactics, techniques, and procedures. Experience
> is also required in ORSA of large, complex databases, modeling, and simulation
> of operations from small unit through division and corps including advanced
> information and simulation technologies guiding Army research and development
> and acquisition decisions, scenario wargaming, and graphical user interfaces, and
> art and design. Additionally, knowledge and experience in computer support,
> information management, security administration, and supply operations is
> required. . . .

14.     PWS paragraphs 6.1. through 6.14. describe the tasks and qualifications required of the
labor categories listed in the CLINs. The categories all require subject matter training,
knowledge, or experience. However, apart from specific experience and knowledge, the labor
categories typically require skills in computer gaming, simulations, operations, security, software
design, and software testing. In short, even though knowledge of Operations Research/Systems
Analyst, Combat Operations, Army doctrine, tactics, force structure, communications, training,
emerging threats, and the ability to train is required, use and familiarity with computer systems is
inherent to perform the contract.

15.     Section M of the RFP contains the evaluation factors for award, which are:

1.     Overall Technical Approach

2.     Experience and Technical Qualifications of Personnel

3.     Organization and Management

4.     Past Performance - Corporate Background, Experience, and Performance

Factors #1 and #2 are equal in importance and twice as important as factors #3 and #4, which are
equally important.

16.    Evaluation Factor for Award #4 has nine Subfactors. Of these nine, five relate directly to computer hardware and software experience or skills, *i.e.*, software engineering, systems administration, computer systems and database development, management, and administration, computer graphics, information, personnel and physical security.

<u>Appellant's Appeal and Argument</u>

On September 8, 2005, RhinoCorps, Ltd. ("Appellant") filed an appeal, asserting that the appropriate NAICS code for the procurement should be 541330, Engineering Services, with a corresponding $4 million annual receipts size standard. Appellant asserts that this code has a $23 million annual receipts size standard, but that is only under the sub-codes, Military and Aerospace Equipment and Military Weapons, and Contracts and Subcontracts for Engineering Services awarded under the National Energy Policy Act of 1992. *See* 13 C.F.R. § 121.201.

Appellant asserts other solicitations for similar procurements to support TRAC have not used NAICS code 541710, but rather, have used NAICS code 541330. Appellant further asserts this RFP stems from a procurement for support at WSMR, which the Army originally classified under NACIS code 541330 and does not have substantially different requirements from this RFP. In addition, Appellant points out the Army announced a sole source contract extension to the TRAC WSMR incumbent contractor with NAICS code 541330.

Appellant argues persuasively that the support services the Army seeks here to procure are not Research and Development as envisioned in NAICS code 541710. As it points out, the RFP calls for assistance with the TRAC's operations research activity providing analyses, studies, modeling, and simulations for military operations. The RFP requires the contractor's personnel to be knowledgeable and experienced in Army policies, doctrine, concepts, tactics, and procedures as well as operations research and systems analysis. Thus, there is no requirement they utilize physical, engineering, or biological sciences in laboratories to develop products, as does the Army Research Laboratory.

Appellant asserts this RFP seeks to procure operations research (the discipline of applying advanced analytical techniques to help make better decisions and to solve problems) wargame modeling, analyses, studies, and simulations. Appellant argues these services are not research and development. These activities, Appellant argues, are properly characterized as applied engineering support, not research and development.

In its September 21, 2005, Motion for Summary Decision, Appellant argued that the Army's reply to an information request by this Office prove NAICS code 541710 inapplicable. Specifically, Appellant urges this Office find that the Army's characterization of the RFP's purpose as "to provide professional, scientific, and technical <u>support</u> to TRAC-White Sands Missile Range, NM." (emphasis added by Appellant) means NAICS code 541710 is plainly wrong.

NAICS-4736

- 6 -

Appellant asserts this Office should apply NAICS code 541330 to this procurement. The logic Appellant offers is that since the Army has historically used NAICS code 541330 for similar efforts, it should use it for this RFP.

### Procedural Matters

This Office originally assigned this case to Judge Christopher Holleman. The Assistant Administrator later reassigned this case to me. 13 C.F.R. § 134.218(a).

Appellant filed a Motion for Summary Decision on September 21, 2005. Since I believe its motion is not appropriate, as may be discerned from the Discussion below, it is DENIED.

On October 3, 2005, I held a conference call with the Army (Mr. Robert Knopp) and Appellant (Mr. Anthony Contri). During that call, I informed both parties I believed the NAICS codes each proposed were incorrect as a matter of law. I requested the parties to suggest to me an appropriate code after discussing the matter with each other. The Army and Appellant have reasonably informed me they do not believe they can do that.

### DISCUSSION

Appellant filed the instant appeal within 10 days after the Army issued the solicitation. Thus, the appeal is timely. 13 C.F.R. § 134.304(a)(3).

Appellant has the burden of proving, by a preponderance of the evidence, all elements of its appeal. Specifically, it must prove the PCO based his NAICS code designation on a clear error of fact or law. 13 C.F.R. § 134.314. The correct NAICS code is that which best describes the principal purpose of the product or service being procured, in light of the industry description in the *NAICS Manual*,[2] the description in the solicitation, and the relative weight of each element in the solicitation. 13 C.F.R. § 121.402(b).

The NAICS code designated by the PCO, 541710, covers:

> [E]stablishments primarily engaged in conducting research and experimental development in the physical, engineering, or life sciences, such as agriculture, electronics, environmental, biology, botany, biotechnology, computers, chemistry, food, fisheries, forests, geology, health, mathematics, medicine, oceanography, pharmacy, physics, veterinary, and other allied subjects.

*NAICS Manual*, at 745.

---

[2]  Executive Office of the President, Office of Management and Budget, *North American Industry Classification System Manual* (2002).

"Research and Development" means laboratory or other physical research and development. It does not include economic, educational, engineering, operations, systems, or other nonphysical research; or computer programming, data processing, commercial and/or medical laboratory testing. 13 C.F.R. § 121.201, fn. 11(a).[3]

This RFP is not about the conduct of research or of experimental development in the physical, engineering, or life sciences to provide a product or service. None of the labor categories identified within the CLINs and discussed in the facts above, even require experimentation or work by scientists or engineers to develop a product or service (Facts 3, 4, 6, 7, 8, 9, 10, 11, 12, 13, and 14). Instead, in large part, this procurement requires skills specifically excluded from this NAICS code by Footnote 11 to 13 C.F.R. § 121.201, which excludes the computer skills.

Our previous decisions support this analysis. The predecessors of this NAICS code under the Standard Industrial Classification (SIC) system were various codes dealing with research and development, including 8731, Commercial Physical and Biological Research. *NAICS Manual* (1997),[4] at 881-882.

This Office has found physical research SIC codes were applicable to procurements for scientific and technological support for an ongoing drug abuse and drug addiction research program; a research laboratory involved in the development and testing of biological systems for military aircraft; and technical services to support research and development of aerospace and guided missile systems. *SIC Appeal of Braton Biotech, Inc.*, SBA No. SIC-4180 (1996); *SIC Appeal of Engineering Spectrum, Incorporated*, SBA No. SIC-3899 (1994); *SIC Appeal of Malcolm Thomas Industries, Inc.*, SBA No. SIC-3667 (1992).[5] However, we found the code was inapplicable to procurements for support services for a center for the assessment of reproductive health risks, which would not include research; and for the evaluation of research, as opposed to the research itself. *SIC Appeal of Information Ventures, Inc*, SBA No. SIC-4259 (1997); *SIC Appeal of The Cadmus Group, Inc.*, SBA No. SIC-3315 (1990).

In *Cadmus*, this Office held that these codes included basic research, defined as the continuing search for new knowledge with only the direction of the researcher himself; applied research, defined as laboratory studies concerning the practical application of new knowledge; and development, which takes applied research out of the laboratory and translates it into

---

[3]    Some NAICS codes are further defined in SBA's size regulations, which provide additional criteria for classifying procurements under those NAICS codes. *NAICS Appeal of Prudent Technologies, Inc.*, SBA No. NAICS-4710, at 5 (2005).

[4]    Executive Office of the President, Office of Management and Budget, *North American Industry Classification System Manual* (1997).

[5]    Decisions of this Office decided under the SIC system are applicable to NAICS code appeals. *NAICS Appeal of Phoenix Scientific Corporation*, SBA No. NAICS-4416, at 8 (2000).

- 8 -

production. *SIC Appeal of The Cadmus Group, Inc.*, SBA No. SIC-3315, at 8-9 (1990).
Accordingly, I find NAICS code 541710 does not have a substantial relationship to the
services/products the Army seeks to procure in the PWS for this RFP.

The Appellant urges NAICS code 541330. It covers:

[E]stablishments primarily engaged in applying physical laws and principles of
engineering in the design, development, and utilization of machines, materials,
instruments, structures, processes, and systems. The assignments undertaken by
these establishments may involve any of the following activities: provision of
advice, preparation of feasibility studies, preparation of preliminary and final
plans and designs, provision of technical services during the construction or
installation phase, inspection and evaluation of engineering projects, and related
services.

*NAICS Manual,* at 745.

Examples include civil engineering services, construction engineering services, environmental
engineering services, mechanical engineering services, and engineers' offices. *Id.*

In arguing this Office should apply NAICS code 541330 for this RFP, Appellant offers
no meaningful analysis or discussion about why the code is correct. Instead, it simply asserts the
Army has used this code for these kinds of services before. However, evidence concerning these
codes and the PWSs for these procurements have not been offered to or provided to us and are
not part of the record in this case. Accordingly, I cannot consider them. *See* 13 C.F.R.
§§ 134.306(b), 134.315, and 134.316. Moreover, although the Army may have used NAICS
code 541330 for similar procurements in the past, this does not place any stamp of validity upon
its use, for Appellant does not assert this Office has ruled upon its use in those instances.[6]

I find that NAICS code 541330 is plainly incorrect for this RFP. This RFP has nothing to
do with the application of physical laws and engineering principles to the design, development,
and utilization of machines, materials, and instruments, structures, processes, and systems. The
PWS does not require or suggest the contractor is to use engineering principles to provide what
the RFP requires. Rather, there is only incidental language that says computer engineering
degrees may fulfill an educational requirement for the Systems Administrator labor category
(PWS paragraph 6.9.2.). That is hardly unusual, for many Systems Administrators are computer
engineers.

This Office has ruled on matters that have some relevance to this RFP and code 541330.
As mentioned, the predecessor of NAICS codes were SIC codes. Under the SIC system, the
predecessor to NAICS code 541330 was SIC code 8711, Engineering Services. *NAICS Manual*

---

[6]     *See NAICS Appeal of RhinoCorps, Ltd.*, SBA No. NAICS-4729 (2005), where this Office
found NAICS code 541330 was not applicable under similar facts.

(1997), at 879. This Office has held that this code covers procurements for engineering services for radar systems; engineering and computer services for the testing and evaluation of prototypes; engineering services for an electronic systems center; and engineering in support of military equipment. *SIC Appeal of Eagle Systems, Inc.*, SBA No. SIC-3901 (1994); *SIC Appeal of Challenger Engineering, Inc.*, SBA No. SIC-3711 (1992); *SIC Appeal of Advanced Testing Technologies, Inc.*, SBA No. SIC-3687 (1992); *SIC Appeal of America House*, SBA No. SIC-3659 (1992). This Office has never held this code has anything to do with the kind of "soft" sciences prevalent in this RFP and I will not do so here.

To review, the NAICS code the PCO designated, 541710, covers research and development in the physical, engineering, and life sciences, and does not cover procurements which, while they may be related to such research, do not actually call for it. That is because the code only covers laboratory or other physical research and development, not non-physical research, such as the type called for in the RFP. Appellant's requested NAICS code, 541330, covers engineering services, involving the design and utilization of machines, materials, and systems. That is likewise inappropriate.

The PWS for this RFP is diverse. It requires many different skills, including Program Management, Project Leadership, Operations Research/Systems Analysts, Combat Operations Analysts, Simulation Interactors, Software Computer Analysts, and Systems Administration. The commonality between all of these labor categories is that working with computer software and hardware is integral to their ability to perform the contract (Facts 8 - 15). Moreover, for approximately 92,000 of the 212,000 yearly estimated hours (including management hours), writing software, operating hardware, maintaining hardware, and managing a computer system is their primary function. (Note labor categories 110, 111, 112, 113, 117, 118, 119, 120, 121, 122, 123, and 124 in the CLINs.)

Other important categories, both in terms of effort and estimated hourly rate also require substantial computer software effort and focus - beyond the point where expertise in that area is simply a tool.[7] Expertise with and the ability to develop software and fully use computer resources is inherent in these labor categories. For example, PWS paragraph 6.1.2. contains the education and experience requirements for the Senior Program Manager. This person is specifically required to have technical and management experience that includes systems analysis, systems design, software and systems development, systems integration, application development, test and evaluation, etc.

The PWS identifies other labor categories where advanced software and computer skills are required. One is the education and experience requirements for the Operations Research/Systems Analyst (OR/SA) labor categories (labor categories 104, 105, and 106 - 28,000 hours). These individuals, at all levels, besides having subject matter experience, must

---

[7]     *Cf. NAICS Appeal of Eagle Design and Management, Inc.*, SBA No. NAICS-4510 (2002). In that case, this Office found the computer work was a tool. In this instance, the computer effort is so integral to the entire effort it is beyond being a tool.

NAICS-4736

- 10 -

develop, validate, and maintain state-of-the-art computer combat models and wargames (Facts 11 and 12; see PWS paragraph 6.4.1.).

A further example of computer focused labor categories are the Simulator Interactors (labor categories 114, 115, 116, - 30,000 hours). These labor categories, among other things, conduct research for loading on a database; provide exercise support using Janus and other computer models and simulations; translate and convert field directives and maneuvers into required computer models and simulations; and conduct combat simulation using premier Army interactive models. Plainly, capability to work with computer software and hardware at an advanced level is critical to the function of Simulator Interactors.

The Combat Operations Analyst labor categories also have requirements to work extensively with computer wargames [programs] and simulations (labor categories 107, 108, and 109 - 36,000 hours). PWS paragraph 6.5.1. and the task chart make it plain these individuals will work extensively with computers to perform their functions.

It is also probative the PWS identifies CM as a responsibility of the Contractor (Fact 10). This particular requirement is normally associated with deliverable products such as computer software or complex manufactured products a contractor changes or modifies as it performs the contract.[8] Here, the PWS makes it plain the Contractor will be developing or modifying software as the contract progresses. This makes CM relevant.

In noting the amount of labor category efforts with a substantial relationship to computer software usage or expertise, it is also important to recognize the Evaluation Factors for Award in Section M of the RFP further support the premise that working with computers is vital to the procurement. While the first three evaluation factors do not address PWS requirements, the fourth factor does under Past Performance. Of the nine Subfactors listed, five are directly connected to the computer services, *i.e.*, Software Engineering, Systems Administration, Computer Systems and Database Development, Management, and Administration, Computer Graphics, and Information, Personnel, and Physical Security. What is more, the Subfactors for Technical Writing and Office Management and Research Analysis also have a strong relationship to computer services.

My analysis shows that approximately 75% of the total labor category hours listed in the CLINs are either directly related or strongly related to the provision of computer software, modification, testing, or supporting services. Further analysis shows that a very substantial portion of the IGE relates to the provision of computer software, modification, testing, or supporting services. In addition, computer software and other services was the part of the PWS most specifically identified in the Evaluations Factors for Award. I therefore find that NAICS

---

[8]    Configuration management requirements are typical in contracts for complex software or hardware products. Configuration management is a key task, for it is how the Government tracks the evolution of the product so it can determine exactly what it is getting and how the product became what is delivered as it is modified and changed as the contract progresses.

- 11 -

code 541511, Custom Computer Programming Services, with an annual size standard of
$21 million, is the proper designation for this RFP.

In making this determination, I have considered Facts 1 - 16, the entire PWS, and the
Independent Government Estimate. It is my opinion they show the weight of this procurement is
for the provision of services directly related to computer software and support services. This
determination is consistent with NAICS code 541511, which provides:

> [E]stablishments primarily engaged in writing, modifying, testing, and supporting
> software to meet the needs of a particular customer.

*NAICS Manual,* at 738.

In this case, the successful offeror will be writing, modifying, testing, and supporting wargaming
and simulation software so the Army (the particular customer) can run wargames and
simulations for WSMR. This expertise, along with knowledge of the Army mission, is critical
for performance of the contract. Absent the computer software expertise and knowledge, the
contractor would not be able to perform the work required in the PWS. Quite simply, the
method of delivering the service - computer software and hardware has graduated from being
merely a tool. The Army requires contractors to be expert in writing, modifying, testing, and
supporting software as an integral and essential part of providing services required by this RFP.

This Office has recently decided a case involving this Appellant with similar facts and
found that NAICS code 541690 applies. *NAICS Appeal of RhinoCorps, Ltd.*, SBA No. NAICS-
4729 (2005). However, the present facts are sufficiently different as developed herein to justify
the use of NAICS code 541511, for this RFP's successful offeror will be providing the Army
services that go far beyond Scientific and Technical Consulting Services or expertise.[9] In this
RFP, the contractor will undoubtedly provide expertise, but that expertise will have no value if it
the contractor cannot write, modify, test, and support existing and new software and hardware.
Thus, it is my view that the inherent nature of this procurement is such that NAICS code 541511
is the code that best describes the principal purpose of the services the Army is procuring, in
light of the industry description in the *NAICS Manual,* the description in the RFP, and the weight
of the labor categories in the RFP. *See* 13 C.F.R. § 121.402(b).

Accordingly, I conclude that Appellant has met its burden of establishing error in the
PCO's designation of NAICS code 541710 for this procurement. However, I find the appropriate
NAICS code is 541511, with a corresponding $21 million annual receipts size standard.
Appellant's appeal is SUSTAINED.

---

[9]    The size standard for NAICS code 541690 is $6 million in annual receipts.

- 12 -

## CONCLUSION

The appropriate NAICS code for this RFP is 541511, with a corresponding $21 million annual receipts size standard. The PCO's designation is REVERSED, and the instant appeal is GRANTED as provided herein.

This is the Small Business Administration's final decision.  13 C.F.R. § 134.316(b).

THOMAS B. PENDER
Administrative Judge

# Exhibit 1

Office of Hearings and Appeals
October 17, 2005
Page 12

Exhibit 1: Table of PWS Required Computer Skills by Labor Category

| X indicates it is required by PWS <br><br> Labor Categories | Computer Gaming | Simulations | Operations | Security | Software Design | Software Testing |
|---|---|---|---|---|---|---|
| Sr Program Manager | | X | X | | X | X |
| Program Manager | | | X | | | |
| Project Leader | | | | | | |
| Senior OR/SA/Study Lead | | X | | | | |
| Senior OR/SA | | X | | | | |
| OR/SA | | X | | | | |
| Cmbt Ops Analyst III/Study Leader | | X | X | | | |
| Cmbt Ops Analyst II | | X | X | | | |
| Cmbt Ops Analyst I | | X | X | | | |
| S/W Analyst IV/Team Leader | | X | | | X | X |
| S/W Analyst III | | X | | | X | X |
| S/W Analyst II | | X | | | X | X |
| S/W Analyst I | | X | | | X | X |
| Sim Interactor III/Trnr | | X | | | | |
| Sim Interactor II | | X | | | | |
| Sim Interactor I | | X | | | | |
| Senior Systems Administrator | | | | X | | |
| System Administrator | | | | X | | |
| Maintenance Tech | | | | | | |
| Computer Op IV/Tech Writer | | | X | | | |
| Computer Op III/Asst Tech Ed | | | X | | | |
| Computer Op II | | | X | | | |
| Computer Op I | | | | | | |
| Sec Specialist | | | | X | | |
| Accountant | | | | | | |
| SME/Consultant | | | X | | | |
| Executive Military Analyst | | | X | | | |
| Sr Military Mentor/Consultant | | | X | | | |

# Exhibit 2

Exhibit 2 – Example of Similar Procurement Using NAICS 541710

# RD&E Services in Distributed Simulation Technologies
Link to RFP Information Page 01

http://www.eps.gov/spg/DON/ONR/N00173/N00173%2D05%2DR%2DHA04/Attachments.html - Posted on Jun 28, 2005

General Information

Document Type:     Presolicitation Notice
Solicitation Number:  N00173-05-R-HA04
Posted Date:   Jun 28, 2005
Original Response Date:
Current Response Date:
Original Archive Date:      Jun 28, 2006
Current Archive Date: Jun 28, 2006
Classification Code:   A -- Research & Development
Set Aside:    Total Small Business
Naics Code:    541710 -- Research and Development in the Physical, Engineering, and Life
Sciences

Contracting Office Address
Department of the Navy, Office of Naval Research, Naval Research Laboratory, 4555 Overlook
Ave. S.W., Washington, DC, 20375

Description
The Naval Research Laboratory (NRL) has a requirement for Research Development and
Engineering (RD&E) Services in the following task areas:

- Distributed Simulation Technologies;
- Electronic Warfare Analysis; and
- Computer Modeling and Simulation.

ENEWS is tasked with developing simulations of naval EW systems, and anti-ship threats, and
military communication systems to support the development, fielding and testing of electronic
and weapons systems. Work is to be performed on-site at the Naval Research Laboratory (NRL),
Washington, DC.

The contractor must provide approximately 37,640 hours of analytical, scientific, technical,
engineering and administrative support on a level-of-effort basis.

The Government anticipates a 12-month period of performance with four Options that will
extend the period of performance for an additional 12 months each, if exercised.

The Government anticipates an award of a Cost Plus Fixed Fee (CPFF) term type of contract.
The Statement of Work, labor categories, and minimum personnel qualifications will be included
in the solicitation package. A detailed solicitation and a statement of work will be posted on

NRLs website: http://heron.nrl.navy.mil/contracts/listrfp.htm.

The incumbent contractor is ITT Industries, Inc, at 2560 Huntington Avenue, Alexandria, VA 22303. This is a 100% Small Business Set-Aside. Paper copies of the Request for Proposal (RFP) will not be provided. The NRL uses Electronic Commerce (EC) to issue RFPs and amendments to the RFPs. All responsible sources may submit a bid, proposal which shall be considered by the agency. Notes 1 and 26 applies.

Point of Contact

Hilda Abdon, Contract Specialist, Phone 202-767-0682, Fax 202-767-5896, Email hilda.abdon@nrl.navy.mil - F. Janilea Bays, Contracting Officer, Phone 202-767-2974, Fax 202-767-0430, Email jan.bays@nrl.navy.mil

Place of Performance

Address:      NAVAL RESEARCH LABORATORY 4555 OVERLOOK AVE. S.W., WASHINGTON, DC
Postal Code:   20375
Country:       U.S.A..

**Exhibit 3**

Exhibit 3 – Example of Similar Procurement Using NAICS 541710

# R--FUTURES CENTER WARFARE STUDY AND WARGAME

**General Information**

| | |
|---|---|
| Document Type: | Sources Sought Notice |
| Solicitation Number: | W912SU06WARGAMING |
| Posted Date: | Oct 13, 2005 |
| Original Response Date: | Oct 31, 2005 |
| Current Response Date: | Oct 31, 2005 |
| Original Archive Date: | Dec 30, 2005 |
| Current Archive Date: | Dec 30, 2005 |
| Classification Code: | R -- Professional, administrative, and management support services |
| Set Aside: | N/A |
| Naics Code: | 541710 -- Research and Development in the Physical, Engineering, and Life Sciences |

*Contracting Office Address*

ACA, NRCC, Mission, Building 2796, Fort Eustis, VA 23604

*Description*

Small Business Sources Sought. This is a Sources Sought announcement only seeking small business responses in order to determine small business participation in the acquisition. The Futures Center is conducting market research in order to assist the Army in planning, coordinating and executing the Army Future Warfare Study and Wargame in a series of conferences, seminars, and analysis events culminating in an annual seminar-type wargame and study report.    These analytical events provide a forum for go vernment identified study areas using a dynamic, fully integrated, and network-capable modeling and simulation tool allowing players to rapidly pass information and gain knowledge of a given operational situation. Contractor will be responsible for: 1. Providing a Windows compatible, interactive wargame model(s) that provide scenario dilemmas at the strategic, operational and tactical levels of war, from pre-crises to post conflict that explores concepts for Army, Service and Joint Communities.    This game model must support a 24 hour wargame that addresses force-on-force attrition and non-attrition entropic factors.    2. Develop campaign plans for wargames for approval by senior Army leaders. 3. Coordinate execution of the wargame events based on a government selected Study Program. 4. Provide game operations, game support, game administration, game material, and key personnel Senior Mentor support (subject matter experts). 5. Facilitate each event to moderate discussions and serve as interface between the players/teams to advise and assist players. 6. All contractor support personnel shall be proficient in the Microsoft Office Suite (PowerPoint, EXCEL, and MSWord) to provide wargame related slides, reports and spreadsheets. 7. Electronically archive all game materials and activities. 8.

Provide all administrative support during events to include invitations, issue    instructions, game packets, and all event arrangements. 9. Provide analysis and recommendations for all events. 10. Provide on-site personnel to work pre/post game events and examine future warfare concepts.       11. Provide a secure, controlled Internet-based collaborative working environment (web-site) for analysis and game development throughout the contract period. 12. Provide/coordinate conference facilities which can accommodate up to 200 wargame participants in the Washington DC area. The NAICS Code is 541710 - Research and Development in the Physical, Engineering, and Life Sciences. Your response shall include the following information: size of company (i.e. 8(a), HubZone, WOSB, SB, Veteran, SDB, Service Disabled Veteran Owned Small Business), number of employees, revenue for last three years, relevant past performance on same/similar work dating back five years, and your company's capability to do this type of work. Documentation of technical exp ertise must be presented in sufficient detail for the    government to determine that your company possesses the necessary functional area expertise and experience to compete for this acquisition. The information should be sent to NRCC by COB 31 October 2005. Attn: Pamela Gates, 2798 Harrison Loop Complex, Fort Eustis, VA 23604-5538 or emailed to pamela.gates@eustis.army.mil. Any questions can be directed to Ms. Gates. If a solicitation is issued it will be announced at a later date, and all interested parties must respond to that solicitation announcement separ ately from the responses to this announcement. No reimbursement will be made for any costs associated with providing information in response to this announcement.

*Point of Contact*

        pamela.gates1, (757) 878-3166
        Email your questions to ACA, NRCC, Mission at pamela.gates1@us.army.mil
*Place of Performance*

        Address:    Futures Center Building 134 Whistler Lane Fort Monroe VA
        Postal Code: 23651
        Country:    US ftpArmy

**Exhibit 4**

Exhibit 4 – NAICS 541710 Industries

# U.S. Census Bureau

| 2002 | NAICS | Definitions |
|---|---|---|

| Go to: | No change 1997 to 2002 | 2002 NAICS to 1987 SIC | 1997 Economic Census | Bridge Between 1997 NAICS and SIC |
|---|---|---|---|---|

| 2002 NAICS | 1997 NAICS | 1987 SIC | Corresponding Index Entries |
|---|---|---|---|
| 541710 | 541710 | | Agriculture research and development laboratories or services |
| 541710 | 541710 | | Bacteriological research and development laboratories or services |
| 541710 | 541710 | | Biology research and development laboratories or services |
| 541710 | 541710 | | Biotechnology research and development laboratories or services |
| 541710 | 541710 | | Botany research and development laboratories or services |
| 541710 | 541710 | | Cancer research laboratories or services |
| 541710 | 541710 | | Cerebral palsy research laboratories or services |
| 541710 | 541710 | | Chemical research and development laboratories or services |
| 541710 | 541710 | | Computer and related hardware research and development laboratories or services |
| 541710 | 541710 | | Dental research and development laboratories or services |
| 541710 | 541710 | | Electronic research and development laboratories or services |
| 541710 | 541710 | | Engineering research and development laboratories or services |
| 541710 | 541710 | | Entomological research and development laboratories or services |
| 541710 | 541710 | | Environmental research and development laboratories or services |
| 541710 | 541710 | | Experimental farms |
| 541710 | 541710 | | Fisheries research and development laboratories or services |

| 541710 | 541710 | | Food research and development laboratories or services |
|---|---|---|---|
| 541710 | 541710 | | Forestry research and development laboratories or services |
| 541710 | 541710 | | Genetics research and development laboratories or services |
| 541710 | 541710 | | Geological research and development laboratories or services |
| 541710 | 541710 | 3764 | Guided missile and space vehicle engine research and development |
| 541710 | 541710 | 3769 | Guided missile and space vehicle parts (except engines) research and development |
| 541710 | 541710 | | Health research and development laboratories or services |
| **541710** | **541710** | | **Industrial research and development laboratories or services** |
| 541710 | 541710 | | Life sciences research and development laboratories or services |
| 541710 | 541710 | | Mathematics research and development laboratories or services |
| 541710 | 541710 | | Medical research and development laboratories or services |
| 541710 | 541710 | 8733 | Observatories, research institutions |
| 541710 | 541710 | | Oceanographic research and development laboratories or services |
| 541710 | 541710 | | Physical science research and development laboratories or services |
| 541710 | 541710 | | Physics research and development laboratories or services |
| 541710 | 541710 | | Veterinary research and development laboratories or services |

**Census Bureau Links:**   **Home** · **Search** · **Subjects A-Z** · **FAQs** · **Data Tools** · **Catalog** ·
**Census 2000** · **Quality** · **Privacy Policy** · **Contact Us**

U S C E N S U S B U R E A U
*Helping You Make Informed Decisions*

**Exhibit 5**

Exhibit 5 – Industrial Engineering Relationship to Operations Research

# The Institute of Industrial Engineers

http://www.iienet.org/public/articles/index.cfm?cat=840

# About Industrial Engineering

Industrial engineering (IE) is about choices. Other engineering disciplines apply skills to very specific areas. IE gives you the opportunity to work in a variety of businesses. The most distinctive aspect of industrial engineering is the flexibility that it offers. Whether it's shortening a rollercoaster line, streamlining an operating room, distributing products worldwide, or manufacturing superior automobiles, all share the common goal of saving companies money and increasing efficiencies.

As companies adopt management philosophies of continuous productivity and quality improvement to survive in the increasingly competitive world market, the need for industrial engineers is growing. Why? Industrial engineers are the only engineering professionals trained as productivity and quality improvement specialists.

Industrial engineers figure out how to do things better. They engineer processes and systems that improve quality and productivity. They work to eliminate waste of time, money, materials, energy, and other commodities. Most important of all, IEs save companies money. This is why more and more companies are hiring industrial engineers and then promoting them into management positions.

"'Industrial engineer' is synonymous with systems integrator - a big-picture thinker, in other words. It's an employee who takes what exists today and conceptualizes what should exist in the future. A lot of engineers become disillusioned with the engineering profession because they get involved in minutiae or they end up on a CAD machine all the time, and they never get out in the factory environment or the operating environment. That's not what happens to an industrial engineer. IEs spend most of their time out in the real operating environment, coming up with scientific approaches to problems rather than seat-of-the-pants, temporary solutions," says John Samuels, vice president of Norfolk Southern.

Many people are misled by the term "industrial engineer." The 'industrial' does not mean just manufacturing. It encompasses service industries as well. It has long been known that industrial engineers have the technical training to make improvements in a manufacturing setting. Now it is becoming increasingly recognized that these same techniques can be used to evaluate and improve productivity and quality in service industries.

"Anybody who needs surgery studies, assessments, redesign in the surgery department ... we do it," explains Tryna Knox, director of surgery performance for VHA. 'Onsite hospital visits, which include observations and interviews to understand the flow of patients through operating rooms are conducted to help surgeons and anesthetists understand their own efficiency levels." Knox credits her industrial engineering education for much of her current success. 'I think the whole systems focus in IE is very important,' she says.

---------------------------------------------------------------------------------------------------------------------

# Information from Answers.com
http://www.answers.com/topic/industrial-and-manufacturing-engineering?method=6

**Industrial engineering** is the engineering discipline that concerns the design, development, implementation, and evaluation of integrated systems of people, knowledge, equipment, energy, and material. Industrial engineering draws upon the principles and methods of engineering analysis and

synthesis, as well as mathematics, physical, and social sciences. **Industrial engineers** work to eliminate wastes of time, money, materials, energy, and other resources.

Whereas most engineering disciplines apply skills to very specific areas, industrial engineering is applied in virtually every industry. Examples of where industrial engineering might be used include shortening lines (or queues) at a theme park, streamlining an operating room, distributing products worldwide, and manufacturing cheaper and more reliable automobiles.

The name "industrial engineer" can be misleading. While the term originally applied to manufacturing, it has grown to encompass services and other industries as well. Other similar fields include operations research, systems engineering, ergonomics and quality engineering.

There are a number of things industrial engineers do in their work to make processes more efficient, to make products more manufacturable and consistent in their quality, and to increase productivity.

# Exhibit 6

Exhibit 6 – NAICS Clarification Memorandum No. 3

## Clarification Memorandum No. 3

## Classifying SIC Auxiliary Establishments in NAICS



**Introduction.**--The U.S. Standard Industrial Classification (SIC) designated establishments as being either: (1) operating establishments, or (2) auxiliary establishments (i.e. establishments that primarily serve other establishments of the same enterprise). The SIC Manual provided some specific directions for differentiating 'auxiliary' from 'operating' establishments. Although those guidelines were revised and expanded over time, they proved to be inadequate. The auxiliary establishment designation, under those guidelines, was generally limited to captive establishments providing services. Captive establishments providing goods were treated as operating establishments. The SIC classification criteria for classifying establishments to industries necessitated distinguishing the type of establishment because the criteria for classification varied by type of establishment. Operating establishments were classified based on what the establishment did; while auxiliary establishments providing services were classified based on the classification of the establishment they served. Therefore, the SIC code was assigned to auxiliaries based on the economic activities of the enterprise and a single digit identifier was assigned to describe the actual activities of the auxiliary unit. The SIC guidelines for auxiliary code assignment are included in Appendix 1.

The North American Industry Classification System (NAICS) which replaced the SIC is based on a production-oriented or supply-based conceptual framework. Establishments are grouped into industries according to similarity in the processes used to produce goods or services. Thus, NAICS does not make a distinction between 'auxiliary' and 'operating' establishments and classifies all establishments on the basis of what they do without regard to whom they serve. NAICS did however recognize the unique nature of corporate, subsidiary, and regional managing offices. In general, administering, overseeing, and managing are done by all establishments and is not considered a primary activity. However, in multi-establishment enterprises, an establishment may perform managing as its main or only activity. Since the NAICS classification is based on the production process of the establishment, NAICS included an industry for "Corporate, Subsidiary, and Regional Managing Offices", NAICS 551114, for those establishments "primarily engaged in administering, overseeing, and managing other establishments of the company or enterprise." NAICS Sector 55, Management of Companies and Enterprises, is where such establishments are classified.

The following hypothetical enterprise will be used to illustrate the SIC treatment of auxiliaries, the NAICS treatment of these establishments, and various implementation guidelines that should be followed when classifying these activities. The hypothetical enterprise, Mufflers and Tailpipes, Inc., is made up of seven individual establishments performing distinct business functions. Facility A manufactures mufflers. Facility B manufactures tailpipes. Facility C is a warehouse that stores the mufflers and tailpipes made by Mufflers and tailpipes, Inc. Facility D is a research and design facility that designs the mufflers and tailpipes. Facility E is a separate office created to sell the mufflers and tailpipes to retail auto parts stores. Facility F is Mufflers and Tailpipes Inc.'s corporate headquarters and Facility G is a payroll processing facility for all seven establishments that make up Mufflers and Tailpipes, Inc. Based on these descriptions, the following industry codes would be assigned.

|  | SIC | Aux* | NAICS |
|---|---|---|---|
| Facility A (mufflers) | 3714 | 5 | 336399 |
| Facility B (tailpipes) | 3714 | 5 | 336399 |
| Facility C (warehouse) | 3714 | 3 | 493110 |
| Facility D (R&D) | 3714 | 2 | 541710 |
| Facility E (sales) | 5013* | 5 | 421120 |
| Facility F (HQ) | 3714 | 1 | 551114 |
| Facility G (payroll) | 3714 | 1 | 541214 |

*see Appendix 1. for a further discussion of sales locations and for a definition of single-digit auxiliary codes.

All of the administrative functions associated with Mufflers and Tailpipes, Inc. are classified to motor vehicle part manufacturing in the SIC system because they are providing support functions for the manufacturing activity. NAICS, on the other hand, only classifies the two locations actually manufacturing motor vehicle parts to the manufacturing sector. The other establishments (Facilities C-G) are classified in non-manufacturing sectors based on the actual activities that are performed in each location. It is important to recognize that there may not be any shipments or receipts in some of these facilities. This does not impact their classification. In this example, all of the activities are clearly delineated in separate establishments and there is no overlap between the establishments. This is an easy classification situation but in many ways unrealistic. Rarely are activities clearly delineated into separate establishments in a multi-establishment enterprise.

The adoption of the single classification principle to all establishments solved numerous problems that existed in the prior classification system. However, in the context of statistical reporting and data collecting, the application of this principle requires direction and guidance. The **NAICS United States Manual states that:** *"An establishment is classified to an industry when its primary activity meets the definition for that industry. Because establishments may perform more than one activity, it is necessary to determine procedures for identifying the primary activity of the establishment.*

*In most cases, if an establishment is engaged in more than one activity, the industry code is assigned based on the establishment's principal product or group of products produced or distributed, or services rendered. Ideally, the principal product or service should be determined by its relative share of current production costs and capital investment at the establishment. In practice, however, it is often necessary to use other variables, such as revenue, shipments, or employment as proxies for measuring significance." (NAICS United States 1997, page 17)* The most commonly used proxy measure for production in determining primary activity has been receipts or sales. When receipts information is lacking, employment by function has been used to determine significance. However, theses measures are sometimes difficult to collect and even more difficult to interpret. A NAICS industry may include establishments that produce output for sale to others (market transactions) and also may include establishments that produce output (support activities) for other establishments of the same company without a fee.

## CERTIFICATE OF SERVICE

I hereby certify that, on October 17, 2005, I served the NAICS Appeal of Advanced Systems Technology, Inc. and the Motion for Reconsideration, via federal express and/or facsimile upon the following:

Office of Hearings and Appeals
Small Business Administration
Suite 5900, 409 3rd Street, S.W.
Washington, DC 20416
(also via facsimile)

NRCC Leavenworth Division
c/o Viola Owens
600 Thomas Avenue, Unit 3
Room 254
Fort Leavenworth, KS 66027-1417

John W. Klein, Esq.
U.S. Small Business Administration
409 3rd Street, S.W.
Suite 5900
Washington, DC 20416

David A. Javdan, Esq.
U.S. Small Business Administration
409 3rd Street, S.W.
Suite 5900
Washington, DC 20416

Lawrence P. Block