IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ADVANCED SYSTEMS TECHNOLOGY, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. |
| ) | |
| HECTOR V. BARRITO, ET AL. ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER**

Plaintiff Advanced Systems Technology, Inc. ("AST") has moved the Court to (1) prevent the award under Solicitation No. W91QF4-05-R-0008 until the SBA Office of Hearings and Appeals considers AST's arguments in opposition to the revised North American Industry Classification System ("NAICS") and considers the true nature of the work performed under the contract and (2) suspend the end of the response due date and prevent the award under Solicitation No. W91QF4-05-R-0011 until the SBA Office of Hearings and Appeals considers AST's arguments in opposition to the revised NAICS Code and considers the true nature of the work performed under the contract. The injunctive relief should be pending this Court's review of the prior decisions of the SBA through its Office of Hearings and Appeals and any further action directed to be taken by the SBA Office of Hearings and Appeals on remand.

As set forth below, the requirements for a preliminary injunction are amply satisfied. An injunction should be issued so that AST is allowed to participate in the appeal process and to prevent irreparable injury to AST through the loss of its workforce

and contracts without due process. In light of the authorities and arguments provided below, this evidentiary record warrants entry of a preliminary injunction.

I.  **FACTS**

**TRAC-LEAVENWORTH**

On August 5, 2005, the Army issued Solicitation No. W91QF4-05-R-0008 ("Solicitation 0008") for a multiple award Indefinite Quantity type contract for non-personal services in support of the U.S. Army Training and Doctrine Command ("TRADOC") Analysis Center ("TRAC") located at Fort Leavenworth, Kansas. One of the awards was to be made to a small business.

AST is the incumbent contractor for the work performed for TRAC-Leavenworth through Contract No. DABT65-01-D0001. Solicitation 0008 is the "follow-on" solicitation to the contract.

According to the Performance Work Statement[1] in Solicitation 0008, TRAC is the principal operations research activity for TRADOC and conducts analyses and studies that provide senior decision-makers with information necessary to make decisions regarding proposed concepts, requirements, and programs. This is accomplished by supporting leaders and soldiers with operations analyses, experimentation, warfighting scenarios, combat modeling and simulations, operational effectiveness analysis, and planning and decision aids. Solicitation 0008 contained NAICS code 541710 with a corresponding 500 employee size standard.

On August 19, 2005, RhinoCorps, Ltd. ("RhinoCorps") filed an appeal of the NAICS Code contained in Solicitation 0008. AST received no notice of the appeal and

---

[1] AST has filed with the Court all of the relevant documents as exhibits to its Verified Complaint and incorporates by reference Exhibits A through L attached to the Verified Complaint.

2

did not participate in the proceedings that followed. *See* Declaration of Paul Jemison, dated October 22, 2005, attached as Exhibit A at ¶ 9. On September 23, 2005, the Small Business Administration's Office of Hearings and Appeals ("SBA OHA") issued a decision granting RhinoCorps' appeal and changing the NAICS Code in Solicitation 0008 from NAICS Code 541710 to 541690, with a corresponding $6 million annual receipts standard. That same day, the Army issued an Amendment to the Solicitation changing the NAICS Code to 541690 "due to SBA decision on NAICS code appeal, Docket No. 2005-08-19-45."

AST first learned of the appeal when the Solicitation was amended on September 23, 2005. *See* Exhibit A at ¶ 10. Shortly thereafter, on October 3, 2005, AST filed a timely appeal to the SBA OHA protesting the change in the NAICS Code in Solicitation 0008. The basis for the appeal was the failure to include AST, as the incumbent contractor, in the appeal process or to consider the true nature of the work performed at TRAC-Leavenworth as the appropriate basis for the NAICS code determination.

On October 14, 2005, the SBA OHA dismissed the AST's appeal without addressing either its merits or the fact that AST did not have notice of the earlier appeal. According to OHA, its decision was solely procedural: its "precedent explicitly holds that a decision which determines the correct code for a solicitation controls in the case of later-filed appeals concerning the same solicitation." Since "this Office has already issued a decision that the appropriate NAICS code for this RFP is 541690, Other Scientific and Technical Consulting Services, with a corresponding $6 million annual receipts size standard," it states, "this decision controls all other appeals of this RFP's NAICS code designation."

3

**TRAC-WSMR**

On August 30, 2005, the Army issued Solicitation No. W91QF4-05-R-011 ("Solicitation 0011") for services as to be provided in support of TRAC at White Sands Missile Range, New Mexico ("WSMR"). Solicitation 0011 was restricted to small businesses and had a designated NAICS code of 541710 with a corresponding 500 employee size standard. As with Solicitation 0008, AST is the incumbent contractor for the work performed for TRAC-WSMR through Contract No. DAAD07-98-C-0106. Solicitation 0011 is the follow-on solicitation to the contract.

On September 8, 2005, RhinoCorps filed an appeal to the SBA OHA asserting that the NAICS code in Solicitation 0011 was inappropriate.

On or about October 4, 2005 AST heard third-hand that an appeal may be pending on the TRAC-WSMR Solicitation at the SBA OHA. Based on a telephone call from undersigned counsel to the SBA OHA, it was first learned on October 5, 2005 that there was a pending appeal filed by RhinoCorps on the TRAC-WSMR Solicitation. That day, AST filed a Motion to Intervene in the appeal proceeding, pointing out its incumbent status.

Two days later, on October 7, 2005, OHA denied AST's motion to intervene. RhinoCorps, Ltd., "Order Denying Motion to Intervene," SBA Docket No. NAICS-2005-09-08-48 (October 7, 2005). Although OHA's order said that on September 13, 2005 it had "issued a Notice and Order in this case that closed the record on September 28, 2005," the referenced "Notice and Order" was not a public notice; AST was never served with it and still has not been provided a copy of it. AST did not know that the record had closed until OHA issued its order denying intervention. *See* Exhibit A at ¶ 11.

On October 7, 2005, the SBA OHA issued a decision on the RhinoCorps appeal. The SBA OHA determined that the NAICS Code should be changed on the TRAC-WSMR Solicitation to 541511 with a corresponding $21 million annual receipts size standard. Thus, two solicitations for virtually identical work (Solicitation 0008 and Solicitation 0011) have been assigned difference NAICS codes in two different OHA actions. In part, neither NAICS code accurately reflects the nature of the work performed. AST is not eligible to bid on Solicitation 0011 as its annual receipts are in excess of $21 million. AST will lose a significant portion of its workforce if it is ineligible to bid on Solicitation 0011. *See* Exhibit A at ¶ 12.

Solicitation 0011 was subsequently amended to change the NAICS Code to 541511 and the response date was extended to October 27, 2005.

On October 17, 2005, AST filed a timely appeal to the SBA OHA of the amendment of Solicitation 0011. That same day, AST also filed a Motion for Reconsideration of the SBA OHA October 7, 2005 denial of AST's Motion to Intervene and the October 7, 2005 decision changing the NAICS Code.

## II.    ARGUMENT

### A. Preliminary Injunction Standards

Preliminary injunctions are determined under the familiar four part test. A plaintiff is entitled to a preliminary injunction when it demonstrates:

> 1) a substantial likelihood of success on the merits; 2) that it would suffer irreparable harm if the injunction is not granted; 3) that an injunction would not substantially injure other parties; and 4) that the public interest would be served by an injunction.

Mova Pharmaceutical Corp. v. Shalala, 140 F.3d 1060, 1067 (D.C. Cir. 1998). Courts in the District of Columbia employ a sliding scale, under which a particularly strong showing on one factor can compensate for weakness on another. Health Ins. Ass'n of America v. Novelli, 211 F. Supp.2d 23, 28 (D.D.C. 2002). Thus, injunctive relief may be issued, for example, when there is a strong showing of success on the merits even if there is a more modest showing of irreparable injury. Id. Here, AST is entitled to injunctive relief because each factor enumerated above weighs strongly in its favor.

**B. Factors Warranting Granting NCIS Injunctive Relief**

>    **1. AST is likely to succeed on the merits of its claims that the Small Business Administration's decisions denying its appeal in SBA Docket No. NAICS-2005-10-03-45 and denying its motion to intervene in SBA Docket No. NAICS-2005-09-08-48 were arbitrary and capricious.**

SBA Docket No. NAICS-2005-10-03-45 – Solicitation 0008

The October 14, 2005 SBA OHA order in Docket No. NAICS-2005-10-03-45 dismissed AST's appeal without ever addressing the merits of that appeal. Instead, the order rests *solely* on the grounds that OHA's "precedent explicitly holds that a decision which determines the correct code for a solicitation controls in the case of later-filed appeals concerning the same solicitation." Oct. 14 Order at 2. If OHA misapplied its "precedent," applied it unreasonably or relied on an unlawful rule, then its failure to address AST's appeal on the merits was an arbitrary and capricious failure "engage the arguments raised before it," KN Energy, Inc. v. FERC, 968 F.2d 1295, 1303 (D.C. Cir. 1992). As shown below, that is precisely the case here and AST's claim to that effect is likely to succeed on the merits.

6

To be sure, an agency is generally obliged to treat rules established through adjudications as "binding precedents." Pacific Gas and Electric Co. v. FPC, 506 F.2d 33, 38 (D.C. Cir. 1974), but such rules are not to be applied by rote. "In subsequent administrative proceedings involving a substantive rule, the issues are whether the adjudicated facts conform to the rule *and whether the rule should be waived or applied in that particular instance.*" Id. (emphasis added). Moreover, where the only basis for the agency's decision is the application of an *unlawful* rule, the agency's decision is not sustainable. AT&T v. FCC, 978 F.2d 727, 734-36 (D.C. Cir. 1992).

Under OHA's reading of its precedent, a would-be bidder never given notice of a successful appeal of an NAICS solicitation code -and therefore not a party to the appeal proceeding -- is barred from challenging the resulting revised code in a subsequent appeal, even if that appeal is timely.[2] If this reading is correct, then OHA's rule is patently unreasonable and arbitrary; it admits of no exceptions, including consideration of whether the rule *should* apply where a party has had no notice of the first appeal.

It is a fundamental element of due process under both the Constitution and the Administrative Procedure Act that parties likely to be affected by administrative actions be given reasonable advance notice and an opportunity to present their point of view. See, e.g., Public Service Comm'n of Kentucky v. FERC, 397 F.3d 1004, 1012 (D.C. Cir. 2005). But if, as was the case here, AST was never given the opportunity to contest RhinoCorps' appeal of the agency's initial NAICS code designation, it is fundamentally unfair to deprive AST of the right to point out the errors in the revised code designation in a subsequent, timely appeal. It is also illogical to defend such a result on the grounds

---

[2] In fact, taken literally, the cited precedent would bar subsequent appeals even where the first appeal was brought improperly or the agency's decision was plainly erroneous.

that it avoids "*re*litigation of a solicitation's NAICS code" (October 14 Order at 2); there can logically be no relitigation if a party has been precluded from litigating the issue at all.

A more plausible interpretation of OHA's precedent is that principles of *res judicata* and collateral estoppel should apply to adjudication of appeals challenging NAICS code designations.[3] Under these principles, parties afforded an opportunity to make their case on a cause of action (*res judicata*)[4] or to develop their position on an issue (collateral estoppel)[5] do not get a second bite at the apple. Such an interpretation of the rule would serve the agency's stated purpose of avoiding "constant relitigation of a solicitation's NAICS code." October 14 Order at 2. "This court has noted that conventional *res judicata* doctrines are not always applicable in the administrative realm." Borough of Landsdale, Pa. v. FPC, 494 F.2d 1104, 1114 n.45 (D.C. Cir. 1974), but should apply "when an administrative agency is acting in a judicial capacity and

---

[3] In support of its ruling, OHA's October 14 Order cites to that office's earlier decisions in Information Ventures, Inc., SBA No. SIC-4294, at 4 (1998); SIC Appeal of All Star Maintenance, Inc., SMB No. SIC-3308 (1990) and SIC Appeal of Crawford Technical Services, Inc., SBA No. SIC-3156, at 2 (1989). But none of these decisions address the question whether the appellant had been a participant in earlier appeals on the same issue --and thus collaterally estopped from relitigating the issue in a subsequent appeal. Indeed, in the principal case cited by OHA, Information Systems (decided by the same Administrative Judge who dismissed the AST appeal), the agency dismissed an appeal by the *same party* that had lost an earlier appeal on the same solicitation.
   By contrast, OHA has, on other occasions made clear that its concern about "relitigating the same issues" arises where the appellant should be "collaterally estopped" from raising an issue *it* has already litigated. Ameriko-Omserv, Joint Venture Applicant, SBA No. SIZ-94-7-1-88 at 1 (1995). OHA's disposition of a prior appeal, it has held "is binding on the *same* appellant and the same joint venturers in a subsequent appeal under the same SIC code for the same type of work." Id. (emphasis added).

[4] The doctrine of *res judicata* holds that a "final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, *as to them*, constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action." Black's Law Dictionary 1174 (5th ed. 1979)(emphasis added). "The original judgment on the merits is conclusive not only as to matters actually raised but also to matters which could have been raised and litigated." Gulf Oil Corporation v. FPC, 563 F.2d 588, 602 (3rd Cir. 1977), cert. denied, 434 U.S. 1062 (1978).

[5] Collateral estoppel is more limited in its effect than *res judicata*; collateral estoppel forecloses a party from relitigating the same question decided adversely to *it* by a prior judgment on another cause of action; the conclusive effect of the prior adjudication constitutes an estoppel only with respect to the identical issues actually litigated and necessary to support the judgment. Gulf Oil Corp. v. FPC, 563 F.2d at 602 (citations omitted), cert. denied, 434 U.S. 1062 (1978).

resolves disputed issues of fact properly before it *which the parties have had an adequate opportunity to litigate.*" Id. (quoting United States v. Utah Construction & Mining Co. 384 U. S. 394, 422 (1966))(emphasis added). Collateral estoppel too, may be applied in administrative proceedings. Truck Drivers and Helpers Local No. 728 v. NLRB, 415 F.2d 986, 988 (D.C. Cir. 1969). But as with *res judicata*, the doctrine requires that the affected party have had an opportunity to litigate the issue when it was first decided:

> In the present case the Board was acting in a judicial capacity when it considered the Pier Drilling and Shield Window claims, the factual disputes resolved were clearly relevant to the issues properly before it, and *both* parties had a full and fair opportunity to argue their version of the facts and an opportunity to seek court review of any adverse findings.

United States v. Utah Construction & Mining Co., supra, 384 U.S. at 422 (emphasis added).

OHA's dismissal of AST's appeal is not supportable on either *res judicata* or collateral estoppel grounds. AST received public notice of the agency's amended code designation when the solicitation was amended and filed a timely protest. But it never had official notice of *any* type of the prior appeal that led to the amended designation. On the contrary, on information and belief, following the filing of RhinoCorps appeal of the agency's initial NAICS code designation, *the only parties afforded notice of the appeal were the agency itself and the appellant.* In these circumstances, the agency's reliance on its disposition of the RhinoCorps appeal as exclusive grounds for dismissal of AST's later, but timely, appeal was a violation of AST's due process rights. And therefore, OHA's refusal even to *consider* the merits of AST's subsequent timely appeal of the amended solicitation – lacking any legitimate procedural basis, was arbitrary and

9

capricious and cannot be sustained. See Public Service Co. of Kentucky v. FERC, 397 F.3d at 1008 (under the APA's arbitrary and capricious standard the agency must "respond meaningfully to the arguments raised before it.")

SBA Docket No. NAICS-2005-09-0848 – Solicitation 0011

The SBA's rules of practice and procedure governing interventions in SBA proceedings are sparse. Without spelling out any other requirements, they permit the SBA to intervene in a proceeding "as of right at any time in any case until 15 days after the close of the record, or the issuance of a decision, whichever comes first." 13 CFR § 134.210(a). By contrast, other interested persons may move to intervene "at any time until the close of the record by filing and serving a motion to intervene containing a statement of the moving party's interest in the case and the necessity for intervention to protect such interest." 13 CFR § 210(b).

To be sure, AST's October 5, 2005 motion to intervene was filed after the record had closed. But there was no way AST could have known that. Although OHA's October 7 Order denying AST's motion states that, "[o]n September 13, 2005, [it] had issued a Notice and Order in this case that closed the record on September 28, 2005," the "Notice" was not public. In fact, AST still has not seen it.

While SBA's rules place a time limit on motions to intervene, the time limit is not immutable. By OHA's own description it "*generally* will not permit intervention after the close of the record in NAICS appeals." October 7 Order Denying Motion to Intervene. (emphasis added). There was, however, more than good cause to make an exception to the general rule. AST's motion pointed out its status as the incumbent contractor for the follow-on solicitation, a factor that gave it an obvious stake in the outcome of the appeal

proceedings. Even more important, AST did not know, and had no reason to know that its motion was even late – the notice setting the record closing date was *never* provided to AST, much less provided in advance of the closing date.

OHA's sole stated reason for denying AST's motion to intervene was that "the short suspense dates applicable to NAICS appeals" create a "need for prompt decision making to further the goals of the procurement process." For several reasons, this explanation is patently insufficient to satisfy an agency's duty to engage in reasoned decisionmaking.

First, even assuming AST had timely notice, OHA never explains why an intervention by the incumbent contractor coming only seven days after the close of the record would preclude SBA from meeting "the goals of the procurement process." Indeed, SBA's own regulations contemplate that the SBA itself can intervene in a case as late as *fifteen* days after the close of the record "as a matter of right." 13 CFR § 210(a). Plainly, the agency's *own* rules contemplate that it *can* meet the "goals of the procurement process" if it grants an SBA intervention motion filed *later* than AST's motion. There is no reason to believe that an SBA motion filed fifteen days after the record closes is *less* likely to interfere with the agency's procurement goals than an intervention by the incumbent filed only seven days after the close of the record. An agency acts arbitrarily when it has "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Motor Vehicle Manufacturers Association, et al. v. State Farm Mutual Automobile Insurance Co., et al., 463 U.S. 29, 43 (1983).

11

Second, the agency's order denying intervention takes no account of the fact that AST had no notice of the record closing date. The duty to engage in reasoned decisionmaking requires the agency to have "given reasoned consideration to each of the pertinent factors." Permian Basin Area Rate Cases, 390 U.S. 747, 792 (1968). In this case, the agency's bare reference to its interest in "prompt decision making" is a wholly inadequate response which makes no effort to weigh the prejudicial effect to AST of having been denied timely notice of either the appeal or the intervention deadline. While an agency need not explain itself with "ideal clarity," it must provide sufficient explanation so that the court is "not . . . left to guess as to the agency's findings or reasons." Greater Boston Television Corp. v. FCC, 444 F.2d 841, 851 (D.C. Cir. 1970). In this case, OHA's "explanation" crosses the line from the "tolerably terse to the intolerably mute." N.L.R.B. v. Curtin Matheson Scientific, Inc., 494 U.S. 775, 799 (1990) (quoting Greater Boston Television Corp. v. FCC, 444 F. 2d at 852).

Finally, if, as OHA maintains, it has an affirmative duty to "further the goals of the procurement process" (October 7 Order), it should not deny itself the input available from the incumbent contractor. Where the agency "has claimed to be the representative of the public interest... [its] role does not permit it to act as an umpire blandly calling balls and strikes for adversaries appearing before it; the right of the public must receive active and affirmative protection." Scenic Hudson Preservation Conference, et. al., v. FPC, 354 F.2d 608, 620 (2d Cir. 1965), cert. den., 384 U.S. 941 (1966); see also National Ass'n of Independent Television Producers and Distributors v. FCC, 502 F.2d 249, 257 (2d Cir. 1974). The incumbent has won the prior competitive solicitation and has therefore been found to have met the government's contract requirements. Before

changing the code designation in a way that would disqualify AST as a small business, the agency should hear what AST has to say. As Justice Frankfurter stated, "Wisdom too often never comes, and so one ought not to reject it merely because it comes late." Henslee v. Union Planters Nat'l Bank & Trust Co., 335 U.S. 595, 600 (1948). OHA has a legitimate interest in expeditious decisionmaking, "but it is not fair play for it to create an injustice, instead of remedying one, by omitting to inform itself and by acting ignorantly when intelligent action is possible." Isbrandtsen Co. v. U.S., 96 F. Supp. 883, 892 (S.D.N.Y. 1951), aff'd by an equally divided court, A/S J. Ludwig Mowinckels Rederi v. Isbrandtsen Co., 342 U.S. 950 (1952).

### 2. AST will be irreparably harmed if Defendants are not enjoined.

Irreparable harm is harm which cannot be compensated adequately by money damages. Belushi v. Woodward, 598 F. Supp. 36, 37 (D.D.C. 1984). Economic loss alone, such as lost revenue, does not amount to irreparable harm. Mylan Pharms, Inc. v. Shalala, et al., 81 F. Supp. 2d 30, 42 (D.D.C. 2000). Irreparable harm is also shown when damages will not be readily ascertainable without injunctive relief. Morgan Stanley DW, Inc. v. Rothe, 150 F. Supp. 2d 67, 77 (D.D.C. 2001).

Here, without an injunction, plaintiff will lose its status as the incumbent contractor on two government contracts and will not be afforded the opportunity to compete for those contracts as a small business. As noted above, the proceedings effectively barring plaintiffs from bidding denied plaintiff's procedural rights under both the APA and the Constitution. Should plaintiffs prevail, they will have no remedy. It cannot be seriously contended that by the defendants that they will provide relief in the form of money damages for all losses sustained by plaintiffs as a result of its inability to compete for the work currently being performed and the concomitant loss

of revenue, profit, workforce, and business reputation, if the reclassification was wrong. Indeed, in similar government contracting situations, courts have routinely found an injunction inappropriate, precisely because of the lack of a remedy in favor of the excluded bidder. See e.g. Mark Dunning Indus, Inc. v. Perry, 890 F.Supp. 1504 (M.D. Ala. 1995); Clark Constr. Co. v. Pena, 895 F.Supp. 1483 (M.D. Ala. 1995).

### 3. The injunction will not injure any interested parties.

The requested injunction will not injure the legitimate interests of defendants or of any third-party. At most, a preliminary injunction will merely delay the award of the follow-on contract. This delay is likely to be minor, given the facts are not generally in dispute and that no award has yet been made. The current period of performance under the existing contract for the services at TRAC-Leavenworth is through February 2006. The current period of performance under the existing contract for the services at TRAC-WSMR is through January 2006 with an option to extend for an additional 90 days. Accordingly, all that will occur is a delay in the contracting process, and all work will continue to be performed under existing contracts for several more months.

### 4. An injunction will serve the public interest.

The public has an interest in a fair and open government and a fair and open government contracting process. The public also has an interest in having the most qualified contractors perform support services in support of American troops. AST is such a contractor. The public also has an interest in due process. A preliminary injunction serves to ensure that both of those public interest objectives are achieved.

### III.    TERMS OF THE PRELIMINARY INJUNCTION

Preliminary injunctive relief should include the following terms:

(1)    The U.S. Army Contracting Agency should be enjoined from making an award under Solicitation No. W91QF4-05-R-0008;

(2)    The U.S. Army Contracting Agency should be enjoined from ending the bidding response date on October 27, 2005 under Solicitation No. W91QF4-05-R-0011 and/or making an award under the Solicitation.

In accordance with Fed. R. Civ. P 65(c), AST will undertake to provide appropriate security to the extent the Court deems proper. Because AST is the injured party and because Government entities are the Defendants in this case, only minimal security should be required. Therefore, AST proposes security in the amount of $1000.00, which it will provide in the form of a check payable to the Registry of this Court pursuant to LCvR 65.1.1 and 67.1.

## IV. CONCLUSION

Every factor favors enjoining defendants from making an award under the Solicitations. Because every factor weighs in its favor, AST is entitled to injunctive relief in the terms outlined above.

Dated: October 24, 2005

_____
LAWRENCE BLOCK (#452190)
HARVEY REITER (#232942)
MICHAEL TUCCI (# 430470)
Stinson Morrison Hecker LLP
1150 - 18th Street, N.W., Suite 800
Washington, D.C. 20036
Tel: (202) 785-9100; Fax: (202) 785-9163

*Attorneys for Plaintiff Advanced Systems Technology, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ADVANCED SYSTEMS TECHNOLOGY, INC. )<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>HECTOR V. BARRITO, ET AL. )<br>)<br>Defendants. )<br>_____) | Civil Action No. _____ |

### DECLARATION OF PAUL JEMISON

I, Paul Jemison, declare, under penalty of perjury and in accordance with 28 U.S.C. § 1746, that the following factual statements are true and correct:

1.  I am a Director, and Manager of Business Development and Marketing for Advanced Systems Technology, Inc. ("AST"), the plaintiff in this action against defendants Small Business Administration ("SBA") and the U.S. Army Contracting Agency, NRCC Leavenworth Division ("ACA"). I have been employed at AST continuously since February, 1985. Terms not defined in this declaration have the meaning ascribed to them in the Verified Complaint.

2.  I am over 18 years of age.

3.  AST is a corporation which is organized under the laws of the State of Oklahoma.

4.  AST is the incumbent Veteran-Owned Small Business contractor for the work performed for the TRAC-Leavenworth through Contract No. DABT65-01-D0001.

5.  AST is the incumbent Veteran-Owned Small Business contractor for the work performed for the TRAC-WSMR through Contract No. DAAD07-98-C-0106.

6.  AST is eligible to bid on contracts with a NAICS Code of 541710 as it has less than 500 employees.

7.  AST is not eligible to bid as a small business for solicitations with NAICS Code 541690 because AST's annual receipts exceed $6 million. Therefore, AST could not bid on Solicitation 0008 as a small business.

8.  AST did not receive official notice that an appeal was undertaken by RhinoCorps on Solicitation 0008.

9.  AST received no notice of the appeal and did not participate in the proceeding that followed related to Solicitation 0008.

10. AST first learned of the appeal when Solicitation 0008 was amended on September 23, 2005.

11. Although OHA's order said that on September 13, 2005 it had "issued a Notice and Order in this case that closed the record on September 28, 2005," the referenced "Notice and Order" was not a public notice; AST was never served with it and still has not seen it. AST did not know that the record had closed on SBA Docket No. NAICS-2005-09-08-48 until OHA issued its order denying intervention.

12. AST is also not eligible to bid under the NAICS Code as changed by OHA on the TRAC-WSMR effort. AST is not eligible to bid on Solicitation 0011 as its annual receipts are in excess of $21 million. AST will lose a significant portion of its workforce if it is ineligible to bid on Solicitation 0011.

13. On information and belief, RhinoCorps is qualified to bid as a small business under the original NAICS Code for both solicitations.

October 24, 2005

Paul Jemison