UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ADVANCED SYSTEM TECHNOLOGY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v ) | CIVIL ACTION NO. 05-2080 (ESH) |
| ) | |
| HECTOR V. BARRITO, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**DEFENDANTS' MOTION TO DISMISS**

Pursuant to Fed. R. Civ. P. 12(b)(1), defendants Hector V. Barrito, et al. hereby move to dismiss this matter for lack of jurisdiction over the subject matter.  In the alternative, defendants request that this matter be transferred to the Federal Court of Claims pursuant to 28 U.S.C. § 1631. A memorandum of points and authorities and a proposed order are included with this Motion.

                                                        Respectfully submitted,

                                                        _____/s/_____
                                                        KENNETH L. WAINSTEIN., DC Bar #451058
                                                        United States Attorney

                                                        _____/s/_____
                                                        R. CRAIG LAWRENCE, Bar #171538
                                                        Assistant U.S. Attorney

                                                        _____/s/_____
                                                        PETER D. BLUMBERG, DC Bar #463247
                                                        Assistant U.S. Attorney
                                                         Judiciary Center Building
                                                        555 4th Street, N.W.
                                                         Washington, D.C. 20530
                                                        (202) 514-7157

Dated: October 28, 2005

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ADVANCED SYSTEMS TECHNOLOGY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v ) | CIVIL ACTION NO. 05-2080 (ESH) |
| ) | |
| HECTOR V. BARRITO, ) | |
| ) | |
| Defendants. ) | |
| ) | |

DEFENDANTS' MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

I. FACTUAL BACKGROUND

A. The Small Business Act and NAICS Codes

The Small Business Act provides that in the government procurement arena certain contracts are to be reserved for small business concerns. See 15 U.S.C. § 644. Pursuant to the Small Business Act, 15 U.S.C. § 631, et seq., Congress has conferred responsibility for establishing which entities qualify as small business concerns, as well for making particular size assessments, upon the Small Business Administration ("SBA"). See 15 U.S.C. § 632. The implementing regulations promulgated by the SBA establish applicable size standards on the basis of North American Industry Classification ("NAICS") codes, each of which describes a particular economic activity or industry and then specifies the maximum number of employees or annual receipts that a concern (and its affiliates) within that sector can have and still be considered a small business concern. See 13 C.F.R. § 121.201. The NAICS codes correspond to the principal purpose of the product or services being sought as well as the economic characteristics comprising the structure of an industry. See 13 C.F.R.

-1-

§§ 121.102; 121.402.

SBA regulations grant the Contracting Officer ("CO") the authority to designate the correct NAICS code and size standard in a solicitation. See 13 C.F.R. § 121.402(b) ("The procuring agency contracting officer, or authorized representative, designates the proper NAICS code and size standard in a solicitation, selecting the NAICS code which best describes the principal purpose of the product or service being acquired.") The CO is authorized to select the NAICS code which best describes the principal purpose of the product or service being acquired. See id.; 48 C.F.R. § 19.303(a). In making this determination, primary consideration is given to the industry description in the NAICS United States Manual ("NAICS Manual"), the product or service description in the solicitation and any attachments to it, the relative value and importance of the components of the procurement making up the end item being procured, and the function of the goods or services being purchased. See 13 C.F.R. § 121.402(b). Other considerations include previous Government procurement classifications of the same or similar products or services, and the classification which would best serve the purposes of the Small Business Act. Id.

An appeal from a CO's NAICS code designation must be filed with the SBA's Office of Hearings and Appeals (SBA-OHA) and served within 10 calendar days after issuance of the initial solicitation. 48 C.F.R. § 19.303(c)(1); 13 C.F.R. § 134.304(a)(3). Upon receipt of a NAICS code appeal, OHA notifies the CO. The CO's response to the appeal, if any, must include argument and evidence (see 13 C.F.R. Part 134), and must be received by OHA within 10 calendar days from the date of the docketing notice and order, unless otherwise specified by the Administrative Judge. 48 C.F.R. § 19.303(c)(4). OHA then issues a decision on the appeal. "If OHA's decision is received by the [CO] before the date the offers are due, the decision shall be final and the solicitation must

be amended to reflect the decision, if appropriate." 48 C.F.R. § 19.303(c)(5). The regulatory standard of review for NAICS appeals to OHA is "clear error of fact or law." 13 C.F.R. § 134.314. The appellant has the burden of proof, by a preponderance of the evidence, in both size and NAICS code appeals. Id.

**B.    The Solicitations At Issue**

Plaintiff, Advanced Systems Technologies ("AST"), is the incumbent contractor on two government contracts, one in support of the United States Army Training and Doctrine Command Analysis Center ("TRAC") located at Fort Leavenworth, Kansas, and the other in support of TRAC at White Sands Missile Range, New Mexico ("WSMR"). See Complaint at ¶¶ 8, 25.

1. TRAC-Leavenworth Solicitation (0008)

In August 2005, the Army Contracting Agency, Northern Region Contracting Center (ACA, NRCC) issued Solicitation No.W91QF4-05-0008, which is the follow-on solicitation to contractual work currently being performed by AST at Leavenworth. See Comp. at ¶ 8, 10.[1] One of the awards in the multiple award contract to be made through this solicitation was to be made to a small business. See Comp. at ¶ 9. This solicitation originally carried a NAICS code 541710, with a corresponding 500 employee standard. See id. at 12. Under this code, AST is eligible to bid on the contract as a small business, because it has fewer than 500 employees. See id. at 13.

On August 19, 2005, another company, RhinoCorps, Ltd. ("RhinoCorps"), filed an appeal of the NAICS Code contained in Solicitation 0008 with the SBA-OHA, alleging that a more restrictive NAICS code was appropriate. See Comp. at ¶ 14. The SBA-OHA issued a decision

---

[1] As this matter is before the Court on a 12(b)(1) Motion to Dismiss, the well pleaded factual allegations are to be treated as true. See Thompson v. Capitol Police Board, 120 F. Supp.2d 78, 81 (D.D.C. 2000) (citations omitted).

changing the NAICS code, and with that change, AST claims that it is no longer eligible to bid on Solicitation 0008 as a small business. See Comp. at ¶¶ 15, 16. AST alleges that it never received "official" notice that RhinoCorps had appealed the assigned NAICS code, and further alleges that its first notice of the appeal was when the solicitation was amended. See Comp. at ¶¶ 19-20.

AST appealed the change in the NAICS code for Solicitation 0008, claiming that as the incumbent contractor, AST should have been included in the appeal process, and also that SBA-OHA did not consider the true nature of the work being performed at TRAC-Leavenworth as the basis for the NAICS code determination. See Comp. at ¶¶ 21-22 and Plaintiff's Exhibit D. The SBA-OHA dismissed the appeal, finding that the its decision had considered, and specifically rejected, the NAICS code that AST was urging. See Comp. at ¶ 24 and Exhibit E thereto.

2. TRAC-WSMR Solicitation (0011)

On August 30, 2005, the ACA, NRCC issued Solicitation No. W91QF4-05-R-011 ("Solicitation 0011") for services to be provided in support of TRAC-WSMR. See Comp. at ¶ 25. This solicitation was limited solely to small businesses and had a NAICS code of 541710 with a corresponding 500 employee standard size standard. See Comp. at ¶ 26. AST is the incumbent contractor on this contract, and Solicitation 0011 is the follow-on solicitation. See Comp. at ¶ 27.

On September 8, 2005, RhinoCorps filed an appeal to the SBA-OHA asserting that the NAICS code for Solicitation 011 was inappropriate, and sought a more restrictive code. See Comp. at ¶ 28. AST claims to have learned third hand that an appeal might have been made, and counsel for AST contacted SBA-OHA and confirmed that RhinoCorps had filed an appeal. See Comp. at ¶ 29-30. That same day, AST moved to intervene in the appeal proceeding. See Comp. at ¶ 32. SBA-OHA denied the Motion to Intervene, stating that the record in the matter had closed on

September 28, 2005.  See Comp. at ¶ 33.

On October 7, 2005 the SBA OHA determined that the NAICS code should be changed on the TRAC-WSMR Solicitation to 541511 with a corresponding $21 million annual receipts size standard.  See Comp. at ¶ 35.  Solicitation 0011 was amended accordingly, and AST alleges that they are unable to bid on Solicitation 0011, as the company has annual receipts in excess of $21 million.

AST filed a timely appeal to the SBA-OHA on the amendment of Solicitation 011, and the basis for the appeal was that AST had not been included in the appeal process and that the SBA-OHA did not consider the true nature of the work performed at TRAC-WSMR as the appropriate basis for the NAICS code determination.  See Comp. at ¶ 38-29.  AST also filed motions for reconsideration on the denial of the intervention motion and the decision changing the NAICS code.  See Comp. at ¶ 40.

**C.   Plaintiff's Claims and the Relief Sought**

AST has filed a three count complaint.  In the first count, AST claims that the SBA violated the Administrative Procedure Act and the Due Process clause of the Fifth Amendment with respect to its actions on the NAICS code for the TRAC-Leavenworth solicitation because AST was not afforded "reasonable advance notice and an opportunity to present their point of view."  Comp. at ¶ 44; see also id. at ¶¶ 41-49.  In Count II, plaintiff similarly challenges the absence of notice of the RhinoCorps appeal on the TRAC-WSMR proceedings, and also challenges the denial of the motion to intervene, claiming that the decision was arbitrary, capricious and deprived it of its due process rights.  See id. at ¶¶ 50-60.  Count III seeks a declaratory judgement holding that the orders of the SBA-OHA changing the NAICS Code for both the TRAC-Leavenworth and TRAC-WSMR are invalid and of no force and effect.  See id. at 60-62.

As relief, plaintiff seeks to enjoin the U.S. Army Contracting Agency from making an award under the 0008 and 0011 solicitations; vacatur of the SBA-OHA orders granting RhinoCorps' two appeals, and a declaration that these orders are of no force and effect. See Comp., Prayer for Relief.

Contemporaneous with the filing of the Complaint, AST also filed a Motion for a Temporary Restraining Order and a Motion for a Preliminary Injunction. These injunctive motions sought orders enjoining the Army Contracting Center, Northern Region Contracting Center from awarding contracts under Solicitations 0008 and 0011 during the pendency of this action. See Motion for a Preliminary Injunction and attached proposed order; Motion for a Temporary Restraining Order and attached proposed order. The Court has set a separate briefing schedule on the Preliminary Injunction motion, subject to the resolution of this Motion to Dismiss.

## II. STANDARD OF REVIEW ON A MOTION TO DISMISS

Defendants move for dismissal under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of jurisdiction over the subject matter. "In reviewing a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the court must accept the complaint's well-pled factual allegations as true and draw all reasonable inferences in the plaintiff's favor." Thompson v. Capitol Police Board, 120 F. Supp.2d 78, 81 (D.D.C. 2000) (citations omitted); see also Vanover v. Hantman, 77 F. Supp.2d 91, 98 (D.D.C. 1999). "The court is not required, however, to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations." Rann v. Chao, 154 F. Supp.2d 61, 64 (D.D.C. 2001), aff'd, 346 F.3d 192 (D.C. Cir. 2004). In addition, "[on] a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of persuasion to establish subject-matter jurisdiction by a preponderance of the evidence." Thompson, 120 F. Supp.2d at 81; Vanover, 77 F. Supp.2d at 98.

A court may resolve a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) in either of two ways. First, the court may resolve the motion based solely on the complaint. See Herbert v. National Academy of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992). Alternatively, to determine the existence of jurisdiction, a court may look beyond the allegations of the complaint, consider affidavits and other extrinsic information, and ultimately weigh the conflicting evidence. See id.; Rann, 154 F. Supp. at 64.

### III.  ARGUMENT

A.   **The Alternative Dispute Resolution Act**

AST's claims should be dismissed for lack of subject matter jurisdiction because under the Administrative Dispute Resolution Act ("ADRA"), the Court of Federal Claims has exclusive jurisdiction over all contract procurement cases or any claimed statutory or regulatory violation(s) in connection with a procurement or proposed procurement. This case indisputably falls within the ambit of the ADRA.

The D.C. Circuit frequently has cautioned that "[j]urisdiction must be established before a federal court may proceed to any other question." Galvan v. Federal Prison Indus., 199 F.3d 461, 463 (D.C. Cir. 1999). See also Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the case."); Stewart v. Ashcroft, 352 F.3d 422, 424 (D.C. Cir. 2003) (disapproving district court ruling which "'assume[d] . . . without deciding  that . . . the court . . . ha[d] jurisdiction to hear the case.'"). This is true in cases seeking preliminary injunctions, as in any other case. See Penn Mun. Auths. Ass'n v. Horniko, 292 F. Supp.2d 95, 101 (D.D.C. 2003) ("Plaintiffs' preliminary injunction

motion does not take priority over defendants' motion to dismiss for lack of jurisdiction. Jurisdiction, of course, is a threshold matter; without it, the court has no authority to decide other potentially dispositive issues in this case."); Labat-Anderson Inc. v. United States, 50 Fed. Cl. 99, 102 (Fed. Cl. 2001) ("Subject matter jurisdiction is a threshold matter which must be addressed before the court reaches the merits of Labat's motion for a preliminary injunction.").

United States district courts are courts of limited jurisdiction. See Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee, 465 U.S. 694, 701-702 (1982). They are empowered to hear only those cases that are (a) specifically authorized by the Constitution, and (b) the subject of a jurisdictional grant by Congress. See Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994). As explained by the United States Supreme Court in Compagnie des Bauxites: "The character of controversies over which federal judicial authority may extend are delineated in Art. III, § 2, cl. 1. Jurisdiction of the lower federal courts is further limited to those subjects encompassed within a statutory grant of jurisdiction." 456 U.S. at 701.

Given the federalism concerns inherent in the assertion of federal subject matter jurisdiction, there is a presumption that a federal court lacks jurisdiction in a particular case until it has been demonstrated that jurisdiction over the subject matter exists. See Naartex Consulting Corp. v. Watt, 722 F.2d 779, 792 (D.C. Cir. 1983); Mars Inc. v. Kabushiki-Kaisha Nippon Conclux, 24 F.3d 1368, 1373 (Fed. Cir. 1994) (ambiguities as to jurisdiction should be "resolved against the assumption of jurisdiction."). The party asserting jurisdiction has the burden of demonstrating that subject matter jurisdiction exists. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Georgiades v. Martin-Trigona, 729 F.2d 831, 833 n. 4 (D.C. Cir. 1984). Jurisdictional

statutes are to be construed "with precision and with fidelity to the terms by which Congress has expressed its wishes." Cheng Fan Kwok v. INS, 392 U.S. 206, 212 (1968).

In 1996, Congress enacted the Alternative Dispute Resolution Act, ("ADRA"), Pub. L. No. 104-320, § 12, 110 Stat. 3870 (1996) (codified at 28 U.S.C. § 1491), which amended the Tucker Act to give the Court of Federal Claims (previously known as the Court of Claims) jurisdiction to consider pre- and post-award procurement protests. See Novell, Inc. v. United States, 46 Fed. Cl. 601, 605 (Fed. Cl. 2000). Previously, the Court of Federal Claims had been limited to considering procurement challenges filed before a contract was awarded. United States v. John C. Grimberg Co., 702 F.2d 1362, 1372 (Fed. Cir. 1983) (en banc). The federal district courts enjoyed broader jurisdiction under the "Scanwell doctrine," which held that the district courts could hear procurement challenges under the APA both before and after a contract was awarded. Scanwell Laboratories, Inc. v. Shaffer, 424 F.2d 859, 861-73 (D.C. Cir. 1970). See also Free Air Corp. v. FCC, 130 F.3d 447, 450 (D.C. Cir. 1997); Int'l Eng'g Co. v. Richardson, 512 F.2d 573, 579 (D.C. Cir. 1979).

The ADRA provides that:

> Both the Unties [sic] States Court of Federal Claims and the district courts of the United States shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or proposed procurement. Both the United States Court of Federal Claims and the district courts of the United States shall have jurisdiction to entertain such an action without regard to whether suit is instituted before or after the contract is awarded.

28 U.S.C. § 1491(b)(1) (emphasis added). This provision allowed both the federal district courts and the Court of Federal Claims to hear "the full range of cases previously subject to review in

either system." 142 Cong. Rec. S11849 (daily ed., Sept. 30, 1996) (statement of Sen. Levin).

The ADRA also included a sunset provision, which terminated federal district court jurisdiction over procurement protests on January 1, 2001. Pub. L. No. 104-320, § 12(d), 110 Stat. at 3875 (codified in note to 28 U.S.C. § 1491 ("Sunset Provisions")). The purpose of the sunset provision was to "prevent forum shopping and to promote uniformity in government procurement award" and "channel the entirety of judicial government contract procurement protest jurisdiction to the Court of Federal Claims." Emery Worldwide Airlines, Inc. v. United States, 264 F.3d 1071, 1079 (Fed. Cir. 2001). As described by Senator Cohen, who offered the sunset provision:

> [The legislation] is designed to increase the efficiency of our procurement system by consolidating jurisdiction over bid protest claims in the Court of Federal Claims. The [legislation] would reverse the decision of the D.C. Circuit in *Scanwell* . . . . Providing district courts with jurisdiction to hear bid protest claims has led to forum shopping and the fragmentation of [g]overnment contract law. Consolidation of jurisdiction in the Court of Federal Claims is necessary to develop a uniform national law on bid protest issues and end the wasteful practice of shopping for the most hospitable forum. Congress established the Claims Court--now the Court of Federal Claims--for the specific purpose of improving the areas of . . . [g]overnment contracts . . . . *Scanwell* jurisdiction frustrates this purpose and deprives litigants of the substantial experience and expertise the Court of Federal Claims has developed in the [g]overnment contracting area.

142 Cong. Rec. S6156 (daily ed. June 12, 1996) (statement of Sen. Cohen). The Federal Circuit in Emery read the ADRA and its legislative history to mean that, beginning January 1, 2001, "the Court of Federal Claims is *the only judicial forum* to bring any government contract procurement protest." 264 F.3d at 1080 (emphasis added). That conclusion has been acknowledged in this Court as well. See Novell, Inc. v. United States, 109 F. Supp. 2d 22, 24-25 (D.D.C. 2000) ("[T]here is no longer . . . APA-based jurisdiction for the district courts in government bid

-10-

protest cases; rather Congress effectively subsumed APA jurisdiction of the district courts into the more specific jurisdictional language of the ADRA.") (cited with approval in Emery, 264 F.3d at 1080).

**B.     As This Matter Arises Out of And is In Connection With a Procurement, Exclusive Jurisdiction over the Claims is Vested in the Court of Federal Claims**

There can be no doubt that this matter is "a challenge to government action in connection with a procurement or proposed procurement." See Labat-Anderson v. United States, 346 F. Supp.2d 145, 150 (D.D.C. 2004); see also Part I, supra (describing the allegations in plaintiff's complaint). The NAICS codes that AST seeks to challenge are codes that have been assigned to two contract solicitations by the Army Contracting Agency for which AST hopes to be the successful bidder. See Comp. at ¶¶ 8-13; 25-27. Less there be any doubt on this point, what plaintiff seeks through its Complaint and, more immediately, through its Motion for a Preliminary Injunction, is for this Court to issue an injunction suspending an ongoing procurement process. See Comp. at ¶ 2; Prayer for Relief at ¶ (a), (b).

Despite what is contained in the pleadings, defendants anticipate that AST will now attempt to characterize its action as something other than a bid protest or a challenge to a procurement decision, and argue that it is not challenging the solicitations or the contracting process per se, but only to whether the SBA erred either substantively or procedurally in granting RhinoCorps' appeal on the NAICS code. Of course, having also brought suit against the U.S. Army Contracting Agency, and having sought an injunction freezing the solicitation process, any such characterization is facially implausible. In this regard, this Court has recently taken a close look at efforts to dress up bid protest cases in alternative clothing in order to try to obtain District

-11-

Court jurisdiction over matters that Congress has expressly determined should be heard in a specialized court. In Labat-Anderson v. United States, 346 F. Supp.2d 145 (D.D.C. 2004), this Court reviewed the language in the ADRA, and concluded that the language is "far more expansive, embracing not only any challenge to 'a solicitation by a Federal Agency for bids,' or 'a proposed award' or 'the award of a contract' but also any alleged violation of statute or regulation in connection with a procurement or proposed procurement." Id. at 151. Labat-Anderson went on to state:

> Other courts to address the "in connection with" clause agree that it is expansive. The Federal Circuit has characterized the language as "very sweeping in scope," and has emphasized that it "does not require an objection to the actual contract procurement." See RAMCOR Servs. Group, Inc. v. United States, 185 F.3d 1286, 1289 (Fed. Cir. 1999). Instead, "[a]s long as a statute has a connection to a procurement proposal, an alleged violation suffices to supply jurisdiction" in the Court of Federal Claims pursuant to section 1491(b)(1). Id. The Court of Federal Claims has read the term "procurement" to encompass "all stages of the process of acquiring property or services, beginning with the process for determining a need for property or services and ending with the contract completion and close-out." Labat-Anderson, 50 Fed.Cl. at 104.

The fact that the substance of AST's challenge is to an action by the SBA-OHA, rather than an action by the contracting agency (the Army Contracting Agency) does not alter the relevant analysis. Since the sunset of United States District Court jurisdiction over procurement matters, the Court of Federal Claims has routinely heard challenges to final agency action of the SBA-OHA arising out NAICS code appeals under the Administrative Procedure Act. See 28 U.S.C. § 1491(b)(4) (stating that actions under the ADRA are to be reviewed under the standards of 5 U.S.C. § 706). In Ceres Environmental Services v. United States, 52 Fed. Cl. 23 (2002), a prospective bidder brought a pre-award bid protest claim, challenging the decision of the SBA upholding a CO's change of a NAICS classification code – precisely the type of claim being

-12-

brought by AST in this matter. The Court of Federal Claims first reviewed its jurisdiction to hear the case, and concluded that "pursuant to the Tucker Act, as amended by the Administrative Dispute Resolution Act of 1996 . . . this court has jurisdiction 'to render judgment on an action by an interested party objecting to ... the award of a contract or any alleged violation of statute or regulation in connection with a procurement.'" Ceres Environmental, 52 Fed. Cl. at 31-32. The Court went on to review the SBA-OHA's decision under the arbitrary and capricious standard of the Administrative Procedure Act.[2] Further, the court specifically noted that although the judicial review standards it was looking to "derived from cases evaluating the actions of contracting officers, the same standards apply when evaluating the SBA's determination of whether a solicitation contains the proper NAICS code." Id. at 33 (citing Stapp Towing Inc. v. United States, 34 Fed. Cl. 300, 306 (1995)).

In a similar vein is Eagle Design and Management, Inc. v. United States, 57 Fed. Cl. 271 (2002), in which an incumbent contractor brought a bid protest action in which the SBA-OHA affirmed a CO's selection of an NAICS code for procurement, a code under which the incumbent was ineligible for selection. Again, even though it was reviewing a final agency decision of the SBA the issue of the Court of Federal Claims' jurisdiction to hear the matter was considered to be beyond question. "[T]his action comes under the court's bid protest jurisdiction, and the court is to review the agency's procurement related decision under the standards set forth in 5 U.S.C. §

---

[2]In this regard, insofar as plaintiff is claiming that District Court jurisdiction is appropriate because they are making an Administrative Procedure Act challenge to the SBA's actions, see Comp. at ¶ 3, such a claim is of no moment, because the Court of Federal Claims review under the ADRA is APA review. See 28 U.S.C. § 1491(b)(4) ("[i]n any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5.")

706." Id. at 273 (citing 28 U.S.C. § 1491(b)(4) (2002)).

Given that the sunset provision took effect only in 2001, and given the clarity of the statutory provision vesting jurisdiction over procurement claims in the Court of Federal Claims, it is not surprising that there are very few district court of federal court of appeals cases addressing this issue. To the extent that there is any decisional law, that law supports defendants' argument that AST's complaint may only be adjudicated in the Court of Federal Claims. In Puglia Engineering v. United States Coast Guard, Civ. A. No. 04-04794 (CRB) 2005 WL 106785 (N.D. Cal. Jan. 18, 2005), the plaintiff was initially granted, but then had rescinded, a Certificate of Competency (COC) by the SBA which affected its ability to be awarded a Coast Guard contract. See id. at **1. The Court had no difficulty determining (in fact, both parties conceded) that "the APA does not serve as a basis for jurisdiction because APA jurisdiction over government bid protest cases was subsumed by 28 U.S.C. section 1491(b), which, under the Administrative Disputes Resolution Act of 1996 ("ADRA"), sunsetted in 2001." (citing Novell, Inc., 109 F. Supp.2d at 24-25 (sunsetting of section 1491(b) means end of district court jurisdiction over bid protest cases under APA)).[3] Conversely, defendants have been unable to find a single case in which a United States District Court has entertained a challenge to an SBA-OHA NAICS decision issued in connection with a procurement since January 2001.

In this regard, it must also be noted that the APA cannot serve as an independent basis for District Court jurisdiction because APA remedies are only available where there is is "no adequate remedy in a court." 5 U.S.C. §§ 702, 704 (actions reviewable are "agency action made

---

[3]The Court ultimately did hear the claim, but that was because District Court jurisdiction could ultimately be predicated on the Suits in Admiralty Act ("SAA"), 46 U.S.C. Appx. §§ 741, et. seq. This statute has no application here.

-14-

reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review"); Dart v. United States, 848 F.2d 217, 221 (D.C. Cir. 1988). Here, Congress has provided an adequate remedy to have AST's challenge heard through the ADRA, and permits APA review in the Court of Federal Claims proceedings.

For these reasons, defendants submit that under ADRA, subject matter jurisdiction over AST claims is vested solely in the Court of Federal of Claims, and plaintiff's complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

### C. Plaintiff Cannot Look to the SBA's "Sue and Be Sued Clause" As a Basis for Subject Matter Jurisdiction Over This Case.

In the paragraph of AST's complaint addressing jurisdiction, plaintiff cites 15 U.S.C. § 634(b). This statute is the SBA's "sue and be sued clause," and provides, in relevant part:

> In the performance of, and with respect to, the functions, powers, and duties vested in him by this chapter the Administrator may . . . sue and be sued in any court of record of a State having general jurisdiction, or in any United States district court, and jurisdiction is conferred upon such district court to determine such controversies without regard to the amount in controversy; but no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Administrator or his property

At least one Court of Federal Claims decision, Red River Service Corp. v. United States, 60 Fed. Cl. 532 (2004), has looked at this sue-or-be-sued clause and concluded "[t]he proper forum for further adjudication of SBA administrative decisions clearly lies with a United States District Court." Id. at 538. The decision also cited two pre-2001 (and thus pre-sunset) decisions to support this conclusion, DSE, Inc. v. United States, 169 F.3d 21, 27-28 (D.C. Cir.1999) and McCarty Corp. v. Rice, 1989 WL 165904, at *11 (D.D.C.1989).

The Red River Service decision, however, has been soundly criticized in a subsequent

Court of Federal Claims opinion, Chapman Law Firm v. United States, 63 Fed. Cl. 25, 30-33 (2004). This criticism comes in large part because Red River Service declined to follow the holdings of the Federal Circuit (Cavalier Clothes, Inc. v. United States, 810 F.2d 1108 (Fed. Cir. 1987)), in reaching a decision that stands apart from other Court of Federal Claims decisions reviewing SBA determinations in the context of a procurement. See supra Part III..B (discussing Ceres Environmental and Eagle Management)  Fortunately this Court need not attempt to reconcile these two Court of Federal Claims decisions, because the D.C. Circuit has directly spoken on the impact of the SBA's sue and be sued clause in a similar context. See Vietnam Veterans of America v. Secretary of the Navy, 843 F.2d 528, 533-34 (D.C. Cir. 1988) (recognizing the "general principle that a federal court may determine its own jurisdiction" and does not defer to Court of Federal Claims cases in making jurisdictional decisions).

In A&S Counsel Co., Inc. v. Lader, 56 F.3d 234 (D.C. Cir. 1995), the Court of Appeals had before it an issue that concerned government contracts, and thus was left to resolve the question of whether the Contract Disputes Act, 41 U.S.C. § 601, et seq. (CDA) vested exclusive jurisdiction in the Court of Federal Claims, or whether the case could be heard in District Court pursuant to the SBA's sue and be sued clause. The D.C. Circuit held that "[t]he Contract Disputes Act, however, appears to be the paradigm of a 'precisely drawn, detailed statute' that preempts more general jurisdictional provisions. It purports to provide final and exclusive resolution of all disputes arising from government contracts covered by the statute." Id. at 241 (citing Brown v. GSA, 425 U.S. 820, 834 (1976)). Since the plaintiff's claims "related to" agency contracts and therefore were covered by the CDA, the claims were outside the jurisdiction of the District Court. See also Campanella v. Commerce Exchange Bank, 137 F.3d 885, 890-91

(6th Cir. 1998); Arbitraje Casa de Cambio, C.V. v. United States Postal Service, 2004 WL 3257073 at **2-3 (D.D.C. Nov. 30, 2004) (reaching the same conclusion on the United States Postal Service's sue and be sued clause, 39 U.S.C. § 401(1)).

As with the CDA, the ADRA constitutes an expression of a Congressional intent to provide a single, specialized forum for the final and exclusive resolution of procurement matters and matters in connection with a procurement or proposed procurement. The ADRA is thus a specific statute that trumps the general jurisdictional grant provided by 15 U.S.C. § 634(b). Cf. Novell, 109 F. Supp.2d at 23 (addressing the exclusivity of Court of Federal Claims jurisdiction post-sunset and citing Brown v. General Services Admin., 425 U.S. 820, 834 (1976) ("[i]n a variety of contexts, the Court has held that a precisely drawn, detailed statute pre-empts more general remedies")). As the Federal Circuit has expressly concluded, the purpose behind the ADRA and the sunset provision was to "vest a single judicial tribunal with exclusive jurisdiction to review government contract protest actions." Emery Worldwide Airlines, Inc., 264 F.3d at1079 (emphasis added). To permit a subclass of bid protest and procurement actions to be heard in a United States District Court simply because those actions involve determinations by the SBA-OHA would be inconsistent with congressional purpose behind the ADRA. It would frustrate the goals of "develop[ing] a uniform law on bid protest issues" and "end[ing] the wasteful practice of shopping for the most hospitable forum." See 142 Cong. Rec. S6156.

For these reasons, AST cannot look to the SBA's "sue and be sued" clause as a basis for District Court jurisdiction.

**D.     The Little Tucker Act Is Not Applicable to the Claims Brought by AST**

AST also invokes the Little Tucker Act, 28 U.S.C. § 1346(a)(2) as a basis for United

-17-

States District Court jurisdiction. See Comp. at ¶ 3. Addressing this claim requires no extended analysis. The Little Tucker Act permits District Courts to hear "[a]ny other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort . . ." 28 U.S.C. § 1346(a)(2). To invoke jurisdiction under the Tucker Act or the Little Tucker Act, a plaintiff must identify a contractual relationship, a constitutional provision, a statute, or a regulation that provides a substantive right to money damages. See Hamlet v. United States, 63 F.3d 1097, 1101 (Fed. Cir.1995) (Tucker Act); Wolfe v. Marsh, 846 F.2d 782, 784 (D.C. Cir. 1988) (per curiam) (Little Tucker Act). AST has made no claims for monetary damages. As pleaded in the Complaint, this is an action seeking review of a decision of the SBA-OHA. AST cannot obtain district court jurisdiction under the Little Tucker Act.[4]

## V. CONCLUSION

WHEREFORE, this case should be dismissed, or transferred to the Federal Court of Federal Claims pursuant to 28 U.S.C. § 1631 ("the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred").

---

[4] To the extent that plaintiff might be heard to claim that failure to obtain these contracts would result in monetary damages, it is fair to assume that the damage would be in excess of $10,000, given plaintiff's representations with respect to irreparable harm in their preliminary injunction papers. For claims in excess of $10,000, the Court of Federal Claims is the exclusive forum. See 28 U.S.C. § 1491(a)(1).

          Respectfully submitted,

          _____
          KENNETH L. WAINSTEIN, D.C. Bar #451058
          United States Attorney


_____   _____
          R. CRAIG LAWRENCE, D.C. Bar # 171538
          Assistant United States Attorney


          _____
          PETER D. BLUMBERG, Bar # 463247
          Assistant United States Attorney
          United States Attorneys Office
          Judiciary Center Building
          555 4th Street, N.W., 10th Floor
          Washington, D.C. 20530
          (202) 514-7157

Dated: October 28, 2005