# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

ADVANCED SYSTEMS TECHNOLOGY,   )
                                       )
                Plaintiff,          )
                                       )
         v                      ) Civ. A. No. 05-2080 (ESH)
                                       )
HECTOR V. BARRITO,              )
                                       )
                Defendants.       )
                                       )

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S
## APPLICATION FOR A PRELIMINARY INJUNCTION

Defendants Hector V. Barrito, et al. hereby file this opposition to plaintiff's Motion for a

Preliminary Injunction.[1]

## I.    FACTUAL BACKGROUND

### A.    The Small Business Act and NAICS Codes

The Small Business Act provides that in the government procurement arena certain contracts

are to be reserved for small business concerns. See 15 U.S.C. § 644. Pursuant to the Small Business

Act, 15 U.S.C. § 631, et seq., Congress has conferred responsibility for establishing which entities

qualify as small business concerns, as well for making particular size assessments, upon the Small

Business Administration ("SBA"). See 15 U.S.C. § 632. The implementing regulations

promulgated by the SBA establish applicable size standards on the basis of North American Industry

Classification ("NAICS") codes, each of which describes a particular economic activity or industry

---

[1]Defendants have previously filed a Motion to Dismiss, asserting that under the
Alternative Disputes Resolution Act, 28 U.S.C. § 1491(b), this Court does not have jurisdiction
over the subject matter of the Complaint, and that jurisdiction properly lies in the Court of
Federal Claims. Per the Court's Minute Order, this preliminary injunction opposition assumes
subject matter jurisdiction, but this opposition should not be construed as any suggestion that
jurisdiction in this Court may be appropriate.

and then specifies the maximum number of employees or annual receipts that a concern (and its affiliates) within that sector can have and still be considered a small business concern. See 13 C.F.R. § 121.201. The NAICS codes correspond to the principal purpose of the product or services being sought as well as the economic characteristics comprising the structure of an industry. See 13 C.F.R. §§ 121.102; 121.402.

SBA regulations grant the Contracting Officer ("CO") the authority to designate the correct NAICS code and size standard in a solicitation. See 13 C.F.R. § 121.402(b) ("The procuring agency contracting officer, or authorized representative, designates the proper NAICS code and size standard in a solicitation, selecting the NAICS code which best describes the principal purpose of the product or service being acquired.") The CO is authorized to select the NAICS code which best describes the principal purpose of the product or service being acquired. See id.; 48 C.F.R. § 19.303(a). In making this determination, primary consideration is given to the industry description in the NAICS United States Manual ("NAICS Manual"), the product or service description in the solicitation and any attachments to it, the relative value and importance of the components of the procurement making up the end item being procured, and the function of the goods or services being purchased. See 13 C.F.R. § 121.402(b). Other considerations include previous Government procurement classifications of the same or similar products or services, and the classification which would best serve the purposes of the Small Business Act. Id.

An appeal from a CO's NAICS code designation must be filed with the SBA's Office of Hearings and Appeals (SBA-OHA) and served within 10 calendar days after issuance of the initial solicitation. 48 C.F.R. § 19.303(c)(1); 13 C.F.R. § 134.304(a)(3). Upon receipt of a NAICS code appeal, OHA notifies the CO. The CO's response to the appeal, if any, must include argument and

evidence (see 13 C.F.R. Part 134), and must be received by OHA within 10 calendar days from the date of the docketing notice and order, unless otherwise specified by the Administrative Judge.  48 C.F.R. § 19.303(c)(4).  OHA then issues a decision on the appeal.  "If OHA's decision is received by the [CO] before the date the offers are due, the decision shall be final and the solicitation must be amended to reflect the decision, if appropriate."  48 C.F.R. § 19.303(c)(5).  The regulatory standard of review for NAICS appeals to OHA is "clear error of fact or law."  13 C.F.R. § 134.314.  The appellant has the burden of proof, by a preponderance of the evidence, in both size and NAICS code appeals.  Id.

**B.    The Solicitations At Issue**

Plaintiff, Advanced Systems Technologies ("AST"), is the incumbent contractor on two government contracts, one in support of the United States Army Training and Doctrine Command Analysis Center ("TRAC") located at Fort Leavenworth, Kansas, and the other in support of TRAC at White Sands Missile Range, New Mexico ("WSMR").  See Complaint at ¶¶ 8, 25.

1. TRAC-Leavenworth Solicitation (0008)

In August 2005, the Army Contracting Agency, Northern Region Contracting Center (ACA, NRCC) issued Solicitation No.W91QF4-05-0008, which is the follow-on solicitation to contractual work currently being performed by AST at Leavenworth.  See Comp. at ¶ 8, 10.[2]  One of the awards in the multiple award contract to be made through this solicitation was to be made to a small business.  See Comp. at ¶ 9.  This solicitation originally carried a NAICS code 541710, with a corresponding 500 employee standard.  See id. at 12.  Under this code, AST is eligible to bid on the

_____

[2]As this matter is before the Court on a 12(b)(1) Motion to Dismiss, the well pleaded factual allegations are to be treated as true.  See Thompson v. Capitol Police Board, 120 F. Supp.2d 78, 81 (D.D.C. 2000) (citations omitted).

contract as a small business, because it has fewer than 500 employees. See id. at 13.

On August 19, 2005, another company, RhinoCorps, Ltd. ("RhinoCorps"), filed an appeal of the NAICS Code contained in Solicitation 0008 with the SBA-OHA, alleging that a more restrictive NAICS code was appropriate. See Comp. at ¶ 14. The SBA-OHA issued a decision changing the NAICS code, and with that change, AST claims that it is no longer eligible to bid on Solicitation 0008 as a small business. See Comp. at ¶¶ 15, 16. AST alleges that it never received "official" notice that RhinoCorps had appealed the assigned NAICS code, and further alleges that its first notice of the appeal was when the solicitation was amended. See Comp. at ¶¶ 19-20.

AST appealed the change in the NAICS code for Solicitation 0008, claiming that as the incumbent contractor, AST should have been included in the appeal process, and also that SBA-OHA did not consider the true nature of the work being performed at TRAC-Leavenworth as the basis for the NAICS code determination. See Comp. at ¶¶ 21-22 and Plaintiff's Exhibit D. The SBA-OHA dismissed the appeal, finding that the its decision had considered, and specifically rejected, the NAICS code that AST was urging. See Comp. at ¶ 24 and Exhibit E thereto.

2. TRAC-WSMR Solicitation (0011)

On August 30, 2005, the ACA, NRCC issued Solicitation No. W91QF4-05-R-011 ("Solicitation 0011") for services to be provided in support of TRAC-WSMR. See Comp. at ¶ 25. This solicitation was limited solely to small businesses and had a NAICS code of 541710 with a corresponding 500 employee standard size standard. See Comp. at ¶ 26. AST is the incumbent contractor on this contract, and Solicitation 0011 is the follow-on solicitation. See Comp. at ¶ 27.

On September 8, 2005, RhinoCorps filed an appeal to the SBA-OHA asserting that the NAICS code for Solicitation 011 was inappropriate, and sought a more restrictive code. See Comp.

at ¶ 28.  AST claims to have learned third hand that an appeal might have been made, and counsel for AST contacted SBA-OHA and confirmed that RhinoCorps had filed an appeal.  See Comp. at ¶ 29-30.  That same day, AST moved to intervene in the appeal proceeding.  See Comp. at ¶ 32. SBA-OHA denied the Motion to Intervene, stating that the record in the matter had closed on September 28, 2005.  See Comp. at ¶ 33.

On October 7, 2005 the SBA OHA determined that the NAICS code should be changed on the TRAC-WSMR Solicitation to 541511 with a corresponding $21 million annual receipts size standard.  See Comp. at ¶ 35.  Solicitation 0011 was amended accordingly, and AST alleges that they are unable to bid on Solicitation 0011, as the company has annual receipts in excess of $21 million.

AST filed a timely appeal to the SBA-OHA on the amendment of Solicitation 011, and the basis for the appeal was that AST had not been included in the appeal process and that the SBA-OHA did not consider the true nature of the work performed at TRAC-WSMR as the appropriate basis for the NAICS code determination.  See Comp. at ¶ 38-29.  AST also filed motions for reconsideration on the denial of the intervention motion and the decision changing the NAICS code. See Comp. at ¶ 40.

**C.    Plaintiff's Claims and the Relief Sought**

AST has filed a three count complaint.  In the first count, AST claims that the SBA violated the Administrative Procedure Act and the Due Process clause of the Fifth Amendment with respect to its actions on the NAICS code for the TRAC-Leavenworth solicitation because AST was not afforded "reasonable advance notice and an opportunity to present their point of view."  Comp. at ¶ 44; see also id. at ¶¶ 41-49.  In Count II, plaintiff similarly challenges the absence of notice of the RhinoCorps appeal on the TRAC-WSMR proceedings, and also challenges the denial of the motion

to intervene, claiming that the decision was arbitrary, capricious and deprived it of its due process rights. See id. at ¶¶ 50-60. Count III seeks a declaratory judgement holding that the orders of the SBA-OHA changing the NAICS Code for both the TRAC-Leavenworth and TRAC-WSMR are invalid and of no force and effect. See id. at 60-62.

As relief, plaintiff seeks to enjoin the U.S. Army Contracting Agency from making an award under the 0008 and 0011 solicitations; vacatur of the SBA-OHA orders granting RhinoCorps' two appeals, and a declaration that these orders are of no force and effect. See Comp., Prayer for Relief.

Contemporaneous with the filing of the Complaint, AST also filed a Motion for a Temporary Restraining Order and a Motion for a Preliminary Injunction. These injunctive motions sought orders enjoining the Army Contracting Center, Northern Region Contracting Center from awarding contracts under Solicitations 0008 and 0011 during the pendency of this action. See Motion for a Preliminary Injunction and attached proposed order; Motion for a Temporary Restraining Order and attached proposed order.

On October 26, 2005, the Army Contracting Agency represented that it did not expect a contract award to be made on the 0008 solicitation until at least the end of November, and agreed that it would stay the closing date for proposals on the 0011 solicitation until November 4, 2005. Consequently, per a conference call with the Court, this matter is proceeding solely as a preliminary injunction motion.

## II.    STANDARD OF REVIEW ON A MOTION FOR PRELIMINARY INJUNCTION

For a court to grant a preliminary injunction, the moving party must show: (1) a strong likelihood of success on the merits; (2) that without injunctive relief, it will suffer irreparable harm; (3) that injunctive relief will not substantially harm other interested parties; and (4) that the public

interest favors the injunction. See Nat'l Wildlife Fed'n v. Burford, 835 F.2d 305, 318 (D.C. Cir. 1987); Johnson v. Holway, 329 F. Supp.2d 12, 14 (D.D.C. 2004); Fed'n Internationale De Football Ass'n v. Nike, 285 F. Supp.2d 64, 68 (D.D.C. 2003).  A preliminary injunction is an extraordinary form of relief that should not be granted absent a clear and convincing showing by the moving party. See Johnson, 329 F. Supp.2d at 14 (citing Kahane v. Sec'y of State, 700 F. Supp. 1162, 1165 (D.D.C. 1988)).

Additionally, in government contracts cases, the necessity for proving irreparable injury for injunctive relief is "particularly compelling due to the strong public interest in an orderly efficient, expeditious government procurement process."  Smith & Wesson, Div. of Bangor Punta Corp. v. United States, 782 F.2d 1074, 1081 (1st Cir.1986); see also Cincinnati Electronics Corporation v. Kleppe, 509 F.2d 1080, 1089 (6th Cir.1975).  As the Court of Appeals for this Circuit held in M. Steinthal & Co. v. Seamans, 455 F.2d 1289, 1303 (D.C. Cir. 1971), "[i]t would be intolerable for any frustrated bidder 'to render uncertain for a prolonged period of time government contracts which are vital to the functions performed by the sovereign.'" (citation omitted).

## III.    AST IS NOT ENTITLED TO PRELIMINARY INJUNCTIVE RELIEF

### A.    AST Has Not Made a Strong Showing of a Likelihood of Success on the Merits

#### 1.    Standard of Review

Under the standard of review applicable in bid protest cases, an agency's procurement decisions will be upheld unless shown to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); 28 U.S.C. § 1491(b)(4).  A reviewing court may not intervene unless the disappointed bidder demonstrates that there was no rational basis for the award decision, or demonstrates "a clear and prejudicial violation of applicable statutes or

regulations." Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1324, 1332 (Fed. Cir. 2001); Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1057 (Fed. Cir. 2000). In addition to demonstrating a significant error in the procurement process, the protestor must also show that the error was prejudicial in order to prevail in a bid protest. See Emery Worldwide Airlines v. United States, 264 F.3d 1071,1085-86 (Fed. Cir. 2001); Impresa, 238 F.3d at 1332-33; Advanced Data Concepts, 216 F.3d at 1056 ("ADC must show not only that significant errors occurred in the procurement process, but also that the errors were prejudicial"); Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365, 1367 (Fed. Cir. 1999) ("a protester must show a significant, prejudicial error in the procurement process"); Statistica, Inc. v. Christopher, 102 F.3d 1577, 1581 (Fed. Cir.1996).

Although these principles are derived from cases evaluating the actions of contracting officers, the same standards apply when evaluating the SBA-OHA's determination of whether a solicitation contains the proper NAICS code. See e.g., Ceres Environmental Services, Inc. v. United States, 52 Fed Cl. 23, 33 (2002) (citing Stapp Towing Inc. v. United States, 34 Fed. Cl. 300, 306 (1995) (utilizing bid protest standard in reviewing SBA's final decision upon a responsibility evaluation).

2.     AST Had No Due Process Right to "Official" Notice of RhinoCorps' Appeal

The gravamen of AST's challenge to SBA-OHA's decisions is that AST never received "official notice" that RhinoCorps had appealed the NAICS codes assigned to Solicitations 0008 and 0011 and thus did not have the chance to timely intervene in those proceedings. See Comp. at ¶ 19, 29 (claiming that they heard of the ongoing appeal proceedings "third hand."). Significantly, AST does not contend that third parties have a statutory right to notice of NAICS appeals under the

-8-

Small Business Act, 15 U.S.C. § 631, et seq. See generally Complaint. Nor does AST claim that other prospective bidders were entitled to official notice of RhinoCorps' appeal under the relevant SBA regulations. This is, no doubt, because the governing regulations contain no such requirement. See 13 C.F.R. § 134.304(a)(3); 13 C.F.R. § 134.204. Rather, AST claims that "[i]t is a fundamental element of due process under the Constitution and the Administrative Procedure Act that parties likely to be affected by administrative actions be given reasonable advance notice and an opportunity to present their point of view." Comp. at ¶ 44; see also Motion in Support of Preliminary Injunction ("PI Mot.") at 7 (citing Public Service Comm'n of Kentucky v. FERC, 397 F.3d 1004, 1012 (D.C. Cir. 2005)).

With respect to the claim of a entitlement to notice under the aegis of Due Process, the Fifth Amendment of the Constitution provides that no person shall be deprived of life, liberty or property without due process of law. See U.S. Const, Amend. V. Consequently, to succeed on a claim of procedural due process deprivation--that is, a lack of notice and opportunity to be heard – a plaintiff must first establish that government action deprived it of a protected property interest. See Mathews v. Eldridge, 424 U.S. 319, 332 (1976).

The law is clear, however, that there is no property interest in an unawarded contract. See Old Dominion Dairy Products v. Secretary of Defense, 631 F.2d 953, 962 (D.C. Cir. 1980) (no property interest in contract awards);[3] Dynamic Aviation v. Department of Interior, 898 F. Supp. 11, 12-13 (D.D.C. 1995); Arrow Air, Inc. v. United States, 649 F.Supp. 993, 999 (D.D.C.1986); see also Renondo-Borges v. Housing and Urban Development, 421 F.3d 1, 9-10 (1st Cir. 2005); Smith &

---

[3]This case did hold that bidders had constitutional standing to bring claims. See id. Defendants have not challenged AST's complaint on Article III standing grounds.

Wesson v. United States, 782 F.2d 1074, 1081 (1st Cir. 1986) ("Award procedures are not designed to establish private entitlements to public contracts but to produce the best possible contracts for the government.").

Further, the fact that AST is the incumbent on the contracts that are the subject of Solicitations 0008 and 0011 does not give rise to a property interest protectable under the Fifth Amendment. Contractors do not acquire protected property rights in terminable or future contracts. See, e.g., Sanitation & Recycling Indus., Inc. v. City of New York, 107 F.3d 985, 995 (2d Cir.1997). AST's preliminary injunction papers do not cite anything that indicates a "legitimate claim of entitlement" to a property interest arising out of their current contract with the government.[4] With respect to the forward-looking solicitations that are the subject of this lawsuit, AST is identically situated to all of the other prospective bidders on the contract – none of whom have a constitutional right to notice of an appeal of an NAICS code.

3.    The Denials of AST's Appeal and the Motion to Intervene Did Not Contravene the APA

AST also claims that the dismissal of its appeal in the 0008 matter and the denial of the Motion to Intervene in the 0011 case violate the Administrative Procedure Act ("APA"). See Comp. at ¶¶ 41-49; ¶¶ 50-59. SBA-OHA's dispositions of AST's filings were not arbitrary and capricious, but rather were based on reasoned decisionmaking, based on the application of long-standing SBA-OHA precedents.

---

[4] The case cited by AST as authority for its due process argument, Public Service Comm'n of Kentucky, is far afield from the matter at issue here, as that case deals with the Federal Energy's Regulatory Commissions' obligation to inform parties of the matters to be addressed at a hearing once a hearing has been set. See Public Service Comm'n, 397 F.3d at 1012.

In the 0008 proceedings, SBA-OHA dismissed AST's appeal (which SBA-OHA does not dispute was timely) because SBA-OHA precedent specifically holds that "a decision which determines the correct code for a solicitation controls in the case of later-filed appeals concerning the same solicitation." See PI Ex. E at 2. This avoids "constant relitigation of a solicitation's NAICS code, as successive potential offerors expressed their unhappiness with the codes determined by this Office's decisions." Id.

This does not mean, however, that SBA-OHA's review is limited solely to the arguments presented by the first appellant. SBA-OHA is able to operate in this manner because, "[i]n deciding a NAICS code appeal [the SBA-OHA] considers not only those codes advocated by the CO and the appellant, but any other code it deems, sua sponte, arguably is appropriate for the solicitation." Id. One need only look at this case to see how this operates in practice. With respect to the 0008 appeal, SBA-OHA actually considered the code now pressed by AST, and specifically rejected it. See id.; see infra Part III.A.4. Moreover, SBA-OHA actually rejected the NAICS code that RhinoCorps sought through its appeal, and ultimately determined that a third code was most appropriate. See id. Therefore, while the SBA-OHA's treatment of successive appeals may appear restrictive to later appellants, that restrictiveness is appropriate given the affirmative obligation to consider not just the code that the first appellant proffers, but all potentially applicable codes. The SBA-OHA's treatment of successive appeals does not violate the APA.

With respect to the 0011 solicitation, AST focuses most of its attention on the denial of its Motion to Intervene, claiming that the decision of the ALJ to deny the appeal because the record had already closed was arbitrary and capricious. See PI Opp. at 10-13. AST acknowledges, as it must, that under the relevant regulations governing motions to intervene, such motions must be made

"before the close of the record," and that the motion to intervene must "contain[] a statement of the moving party's interest in the case and the necessity for intervention to protect such interest." PI Opp. at 10. AST does not dispute that motion to intervene was filed after the record had closed, and thus it spends considerable time arguing that the regulatory deadline is arbitrary. See PI Opp. at 10-13. Yet the untimeliness of the filing was not the only reason that intervention was denied. In his review of the motion to intervene, the ALJ also noted that, "[c]ounsel also explained the reason it was moving to intervene on this date was because he was not aware of this case until October 5, 2005. Counsel offered no other reason for his motion to intervene." PI Ex. G (emphasis added). AST's Motion to Intervene did not include a statement of its interest, or why intervention was necessary to protect this interest. See PI Ex. F; see also 13 C.F.R. § 210(b) (setting forth the requirements). AST's letter mentions that it is the incumbent contractor in the opening sentence of the letter, but offers nothing beyond this mention and, most importantly, offers no argument as to why intervention would be appropriate. See Pl. Ex. F.

AST now appears to have recognized that the Motion to Intervene was flawed in this regard, as evidenced by the very carefully chosen language employed in the PI Motion; namely, "AST's motion pointed out its status as the incumbent contractor for the follow-on solicitation, a factor that gave it an obvious stake in the outcome of the appeal proceedings." PI Mot. at 10-11. Simply "pointing out" that AST was the incumbent contractor does not satisfy the regulatory requirement of a statement of the party's interest and an explanation as to why intervention is necessary to protect that interest. Nor is it "obvious" that its position as incumbent contractor gives it any greater stake in the outcome of the appeal than any other potential bidder on the contract. The failure to be granted intervenor status lies not with arbitrary and capricious decisionmaking by SBA-OHA, but

rather with AST's submission of nothing more than a cursory letter that failed to satisfy an unambiguous regulatory requirement.

> 4.    AST Has Not Shown A Strong Likelihood That, Even If Its Position Was Presented to SBA-OHA, The Appeal Would Have Been Resolved in AST's Favor

For AST to demonstrate a likelihood of success on the merits, it is not enough for it to show that it should have received notice of RhinoCorps' appeal of the assigned NAICS codes.  In order for this Court enjoin the awarding of the contracts under Solicitation 0008 and/or to enjoin the end of the response due date for Solicitation 0011, AST must also show that also show that the claimed error by SBA-OHA was, in fact, prejudicial.  Emery Worldwide, 264 F.3d at1085-86 (Fed. Cir. 2001); Impresa, 238 F.3d at 1332-33; Advanced Data Concepts, 216 F.3d at 1056; Alfa Laval, 175 F.3d at 1367; Statistica, Inc., 102 F.3d at 1581.  This comports not just with the law, but with logic: there is no reason to suspend the ongoing solicitation process if AST's arguments would not ultimately alter the NAICS codes presently assigned to these solicitations.  In this regard, AST has made no showing whatsoever that the SBA-OHA's determinations to apply NAICS code 541690 to Solicitation 0008 and NAICS Code 541511 to Solicitation 0011 were arbitrary, capricious or contrary to law.

In order to prevail in a challenge where the SBA is the final agency decision-maker, the protestor must establish that the SBA-OHA's NAICS code determination had no rational basis or that in making the decision, the SBA-OHA violated an applicable procurement statute or regulation in a manner which was prejudicial to the potential offeror.  See Stapp Towing, 34 Fed. Cl. at 306.  Deference is accorded to the congressional policies underlying the Small Business Act, and the SBA-OHA's final determinations.  See id. at 306; Stellacom, Inc. v. United States, 24 Cl. Ct. 213,

216 (1991); Three S Constructors, Inc. v. United States, 13 Cl. Ct. 41, 45 (1987); see also DSE, Inc. v. United States, 169 F.3d 21, 30 (D.C. Cir.1999) (district court reviewing SBA-OHA's NAICS decision pursuant to APA standard; pre-sunset clause case).  An additional rationale for deferring to the SBA-OHA's final decision is found in the "quasi-technical administrative expertise and a familiarity with the situation acquired by long experience with the intricacies inherent in a comprehensive regulatory scheme." See Baird Corp. v. United States, 1 Cl. Ct. 662, 666 (1983); see also Appalachian Power Co. v. EPA, 249 F.3d 1032, 1051-52 (D.C. Cir.2001) (per curiam) (quoting Public Citizen Health Research Group v. Brock, 823 F.2d 626, 628 (D.C. Cir.1987)).

The court cannot substitute its own judgment for that of the agency.  See Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416 (1971).  Nor can the court invalidate an SBA decision because it would have reached a different result on the record.  Rather, applying the standards applicable to bid protests, it is necessary to review the SBA-OHA's determination and ascertain whether it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. See Stapp Towing, 34 Fed. Cl. at 306; Stellacom, 24 Cl. Ct. at 216; Three S Constructors, 13 Cl. Ct. at 45.  Deference to the SBA-OHA's decision is contingent upon an offering by the agency of a reasoned explanation for its decision which is in accord with material facts contained in the administrative record. See Y.S.K. Constr. Co. v. United States, 30 Fed. Cl. 449, 459 (1994) ("SBA's decision must set forth its rationale with clarity and must be justifiable on that basis").  While no Administrative Record has yet been filed, the agency's reasoned decisionmaking can be shown through the documents appended to plaintiff's Motion for a Preliminary injunction, and these documents show that plaintiff does not have a likelihood of success on the merits of any claim that the SBA-OHA's decision will ultimately be overturned.

-14-

a. *The 0008 Solicitation*

SBA-OHA engaged in a careful and thorough review of the relevant issues attendant to the appropriate NAICS code for the 0008 Solicitation. The ALJ began by reviewing the Performance Work Statement for the contract, which set forth the support that the contractor is expected to provide. <u>See</u> PI Ex. B at 2-3. The decision reviewed the relevant standard on appeal; namely, that the appealing party has the burden to show that the CO's designation is based on a clear error of fact or law. <u>See</u> <u>id</u>. at 4. The ALJ also explained that under governing precedent and the applicable regulations, "[t]he correct NAICS code is that which best describes the principal purpose of the services being procured, in light of the industry description in the <u>NAICS Manual</u>, the description in the solicitation, and the relative weight of each element in the solicitation." <u>See</u> <u>id</u>. at 4-5 (citations omitted).

The decision went on to consider both the code that the CO had assigned, which is also the code that AST believes to be appropriate (541710) and the code urged by RhinoCorps (541330), and reviewed the types of procurement where those codes were found to be applicable. <u>See</u> <u>id</u>. at 5-7. After engaging in this analysis, the ALJ determined that "[n]either of these codes appears to be applicable here." <u>Id</u>. at 6.

Ultimately SBA-OHA concluded that "the instant procurement calls for the contractor to provide consulting services on issues of military policy, doctrine and concepts. The contractor here will assist TRAC in its missions of operations analysis, warfighting scenarios, combat simulations, and operational effectiveness analysis. In other words, the contractor will not be conducting research into the physical, engineering, or life sciences, or performing engineering services on machines, materials, instruments, processes and systems." <u>Id</u>. at 6-7. On this basis, the SBA-OHA concluded

-15-

that the appropriate code was code 541690, which covers "[e]stablishments primarily engaged in providing advice and assistance to businesses and other organizations on scientific and technical issues." Id. at 7-8.

Plaintiff has made no showing in its preliminary injunction papers that the SBA-OHA's decision to assign the 541690 code lacked a rational basis, was the product of a clear error of fact or law, or that a different result would have been reached if it had participated in the proceedings before the decision was rendered. See Stapp Towing, 34. Fed. Cl. at 306. To the contrary, AST's characterization of the contract in the Complaint appears to be entirely consistent with the findings of the ALJ: that the contract involves "conducting studies into the art and science of warfare, and supporting TRAC in its mission to study warfare." Compare PI Ex. B at 7 with Comp. at ¶ 11 ("This is accomplished by supporting leaders and soldiers with operations analyses, experimentation, warfighting scenarios, combat modeling and simulations, operational effectiveness and analysis, and planning and decisions aids."). In any event AST has failed to demonstrate that the absence of notice of the proceeding resulted in any prejudice, as it has not shown any error on the part of SBA-OHA in assigning the 541690 code.

        b.    *The 0011 Solicitation*

        The decision issued with respect to the 0011 solicitation is similar with respect to its thorough consideration of the relevant issues and reaching a reasoned decision. The Administrative Law Judge ("ALJ") considered whether the appropriate code for the solicitation was 541710 (the original code and the one now sought by AST), 541330 (RhinoCorps' proposed code), or some other NAICS code. See Pl. Ex. H. The ALJ reviewed the 0011 Solicitation (also called the Request for Proposals ("RFP")). He made sixteen separate factual findings, including findings based on

-16-

information solicited from the CO.  See id. at 2-5 (referencing the Independent Government Estimate).  Upon consideration of these factual findings, the ALJ concluded:

> This RFP is not about the conduct of research or of experimental development in the physical, engineering or life sciences to provide a product or service.  None of the labor categories identified within the CLINs and discussed in the facts above, even require experimentation or work by scientists or engineers to develop a product or service (Facts 3, 4, 6, 7, 8, 9, 10, 11, 12, 13 and 14).  Instead, in large part, this procurement requires skills specifically excluded from this NAICS code by Footnote 11 to 13 C.F.R. § 121.201, which excludes the computer skills.

See id. at 7.  The decision then reviewed previous SBA-OHA decisions supporting this analysis.  See id. at 7-8.

The decision went on to consider the code urged by RhinoCorps and, as with the 0008 Solicitation, rejected that code as well.  See id. at 8-9.  After considerable review of the Performance Work Statement, see id. at 9-11, the facts identified at the outset of the decision and the Independent Government Estimate supplied by the CO, the SBA assigned NAICS code 541511, which addresses "establishments primarily engaged in writing, modifying, testing and supporting software to meet the needs of a particular customer."  Id. at 11.

Again, AST has not marshaled any evidence in its PI motion to suggest that the decision of the SBA-OHA with respect to the NAICS code for the 0011 solicitation is flawed in any manner, let alone so flawed that it could not survive arbitrary and capricious review, and in particular the highly deferential type of the review that is to be afforded SBA-OHA NAICS code appeals.  See Baird Corp., 1 Cl. Ct. at 666.

Consequently, even assuming arguendo that AST was entitled to notice of RhinoCorps' appeal, AST has not made the necessary showing that the absence of notice was prejudicial.  See Emery Worldwide Airlines, 264 F.3d at 1085-86; Impresa, 238 F.3d at 1332.  The codes that AST

-17-

believes to be appropriate to these solicitations were duly considered and rejected, as were the codes urged by RhinoCorps.

For these reasons, AST has not made a strong showing of a likelihood of success on the merits.

**B.    Plaintiff Has Not Made a Strong Showing of Irreparable Harm**

AST acknowledges, as it must, that "[e]conomic loss alone, such as lost revenue, does not amount to irreparable harm." PI Mot. at 13. "It is ... well settled that economic loss does not, in and of itself, constitute irreparable harm." Wisconsin Gas Co. v. FERC, 758 F.2d 669, 674 (D.C.Cir.1985) (per curiam). Because AST is alleging a non-recoverable monetary loss, it must demonstrate "that the injury [is] more than simply irretrievable; it must also be serious in terms of its effect on the plaintiff." Gulf Oil Corp. v. Department of Energy, 514 F. Supp.1019, 1026 (D.D.C.1981).

Courts within this Circuit have generally been hesitant to award injunctive relief based on assertions about lost opportunities and market share. See Mylan Pharmaceuticals, Inc. v. Shalala, 81 F. Supp.2d 30, 42 (D.D.C. 2000) (citing Berman v. DePetrillo, Civ.A. No. 97-70 (TAF), 1997 WL 148638, at *2 (D.D.C.1997) ( "the loss of a business opportunity is a purely economic injury, and economic loss alone, however substantial, does not constitute 'irreparable harm'"); Bristol-Myers Squibb Co. v. Shalala, 923 F.Supp. 212, 221 (D.D.C.1996) (characterizing as "mere speculation" pioneer drug maker's claim that approval of generic drug would encroach on pioneer's market share and rejecting as "inconsequential" pioneer's claim that lost revenues would be irretrievable); Mead Johnson Pharm. Group v. Bowen, 655 F.Supp. 53, 56 (D.D.C.1986) (finding that purported loss in market share was "pure speculation"), aff'd, 838 F.2d 1332 (D.C. Cir.1988).

-18-

Where the movant has made a strong showing that the economic loss would significantly damage its business above and beyond a simple diminution in profits, preliminary injunctive relief can be ordered. See Bracco Diagnostics, Inc. v. Shalala, 963 F. Supp. 20, 28-29 (D.D.C.1997) (finding research and development costs incurred by plaintiff drug manufacturers were significant, particularly in light of companies' small size); Express One Int'l, Inc. v. United States Postal Serv., 814 F. Supp. 87, 91 (D.D.C.1992) (holding that bidder on government contract demonstrated irreparable injury where loss of 10-year $1 billion contract would cause annual loss of $130 million, would impair bidder company's relationships with subcontractors, and would likely cause significant capital costs and lay-offs).

Here, plaintiff makes a generalized, if not entirely rote, statement that if the contract awards go forward and AST is not selected, there will be "concomitant loss of revenue, profit, workforce and business reputation." PI Opp. at 13-14. Yet AST make no specific showing, through declarations or otherwise, of the degree to which it would be affected by not being awarded these contracts. The PI submissions state nothing about AST's gross revenues and the percentage of those revenues that this contract represents or whether AST would be substantially damaged or put out of business by the failure to receive these contracts. Moreover, it may well be the case that there may be other opportunities (including government contracting opportunities) that would be available to AST even if it was not selected on either of these solicitations that could compensate for the lost revenue and work. In the absence of a sworn declaration from an appropriate official at AST addressing these questions, there is no basis upon which this Court can make the necessary finding of irreparable harm.

-19-

**C.    The Harm to Third Parties by Granting the Injunction Is At Least As Great As the Harm to Plaintiff if the Injunction is Not Granted**

In the contracting context, economic harm of the kind claimed by AST here is typically a zero-sum game; that is, if the plaintiff wins by being awarded the contract, someone else necessarily loses.   While plaintiff contends that it will be irreparably harmed if it is not permitted to bid on Solicitation 0008 as a small business and not permitted to bid at all on Solicitation 0011, the actual harm results from AST not being awarded these government contracts. Or, stated another way, bidding and losing is essentially the same as not being able to bid at all; whether AST fails to obtain the contracts because of an inability to bid (the case here), or because another bidder makes a better offer (which could happen even if the NAICS codes are revised), the harm to AST is identical.

Consequently, if the NAICS codes are revised and AST's bidding status on these contracts is adjusted accordingly, and if AST is awarded those contracts, the third party who would have received the contract but for AST's bid may be harmed just as much as AST claims to be harmed. The economic harm to a smaller company (such as RhinoCorps) from not receiving these contracts would arguably be <u>greater</u> that the claimed harm by AST, since the contract would necessarily constitute a greater percentage of a small company's business that a larger company's.

For these reasons, the harm to third parties prong of the Preliminary Injunction analysis does not strongly weigh in favor of enjoining the ongoing solicitation process.

**D.    Granting an Injunction is Not in The Public Interest**

What this challenge ultimately involves is a larger business (AST) believing that it should be given preferred bidding status on a government contract, and that a NAICS code that advantages smaller businesses is arbitrary and capricious.   Defendant submits that there are three   public

interests that are brought to the forefront by this matter.  The first, discussed above, is "the strong public interest in an orderly efficient, expeditious government procurement process."  Smith & Wesson, 782 F.2d at 1081; see also Cincinnati Electronics Corporation, 509 F.2d at 1089.  That interest would be harmed by granting a preliminary injunction that would interfere with the ongoing solicitation process in this matter, and that might impact the government's ability to have the contracted awarded and an awardee ready to perform when the old contract expires.

The second public interest is the interest that the government contracts at issue here -- which involve support services on military installations – are performed successfully by whomever is ultimately selected.  Plaintiffs offer no evidence that the smaller companies encompassed by the revised NAICS codes could not perform the contractual requirements of these two solicitations.  The public interest does not favor an injunction, the purpose of which is to possibly enhance AST's ability to be awarded these contracts.  Rather, that is a quintessential private interest.

The third and final public interest goes to the overriding purpose behind these NAICS codes and, moreover, the purpose behind the entire Small Business Act:  the notion that smaller businesses lie at the very heart of the country's economy, and that their continuing vitality merits special consideration in the government contracting arena.  As expressed by Congress in the Small Business Act:

> The essence of the American economic system of private enterprise is free competition. Only through full and free competition can free markets, free entry into business, and opportunities for the expression and growth of personal initiative and individual judgment be assured. The preservation and expansion of such competition is basic not only to the economic well-being but to the security of this Nation. Such security and well-being cannot be realized unless the actual and potential capacity of small business is encouraged and developed. It is the declared policy of the Congress that the Government should aid, counsel, assist, and protect, insofar as is possible, the interests of small-business concerns in order to preserve free competitive

enterprise, to insure that a fair proportion of the total purchases and contracts or subcontracts for property and services for the Government (including but not limited to contracts or subcontracts for maintenance, repair, and construction) be placed with small-business enterprises, to insure that a fair proportion of the total sales of Government property be made to such enterprises, and to maintain and strengthen the overall economy of the Nation.

15 U.S.C. § 631(a).  On the basis of this language, defendants submit that the public is best served by the SBA's adherence to its statutory mission, by providing opportunities for small business enterprises to obtain government contracts.  Consequently, an injunction that could result in the disadvantaging of a smaller business in favor of a larger one is contrary to the pubic interest expressed in the Small Business Act.

## IV.    <u>CONCLUSION</u>

WHEREFORE, defendants submit that plaintiff's Motion for a Preliminary Injunction should be denied.  A Proposed Order is included with this opposition.

Respectfully submitted,

_____/s/_____
KENNETH L. WAINSTEIN , D.C. Bar # 451058
United States Attorney


_____/s/_____
R. CRAIG LAWRENCE, D.C. Bar # 171538
Assistant United States Attorney


_____/s/_____
PETER D. BLUMBERG, Bar # 463247
Assistant United States Attorney
United States Attorneys Office
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 514-7157

Dated:  October 31, 2005